RICHARD G. GRIFFITH, Executor, v. ORPHA WITTEN et al.; LAURA L. SHULER, Appellant.

**Division One, December 6, 1913.**

1. **WILL: Indefinite and Uncertain: Illiteracy.** If a paper writing purporting to be the last will and testament of a deceased person is so vague, indefinite and uncertain that a court cannot by reasonable rules of construction determine the real intention and purpose of the deceased, such paper will be declared void; but, although the paper reveals the illiteracy of the writer, if it is susceptible of construction and expresses a defined purpose, and that purpose contemplates the disposition of all of testator's property, it will not .be held to be void.

2. ————: **Rules of Construction.** The cardinal rule for the construction of a will is to get at the real intention and purpose of the testator; and they must be gathered from the instrument itself, if that be possible, and in arriving at them the whole instrument must be considered; but if ambiguity appear, if it is difficult to get at the intention of the will itself, then pertinent matters *aliunde* may be considered.

3. ————: ————: **Aliunde Explanation: Children for Grandchildren.** Where the will uses the word "children" in one place where the context shows testator was speaking of grandchildren, and the will directs that they were to have their share as they reached their majority, *aliunde* evidence is competent to show that at the time the will was made none of his children was under age.

4. ————: **Sale of Real Estate: Implied from Words Used.** Although the will contains no express words authorizing the executor to sell the real estate, yet if it contains the words, "And the farm in Daviss County, Missouri, to Be Rented For the term of 2 years to give them to Be sold and the Grundy

County Land to Be rented for 2 years to give Time to Be sold" and further on says "the timber land to be sold," and the admitted facts show there were farm lands in both Daviess and Grundy counties and a small tract of timber land, it will be held the will authorized the executor to sell the real estate at the end of two years.

5. ———: **Intention to Dispose of Entire Estate.** And where the will authorized the executor to sell the real estate and personal property, and gave one thousand dollars to each of his children and the residue to his grandchildren, it indicates testator's purpose to dispose of his entire estate.

6. ———: **Real Estate: Conversion into Money: And Reconversion by Election.** Where it is clear that the testator intended all his estate to be converted into money and then distributed among his legatees, in equity the real estate will be considered as money for the purposes of the will and reconverted into land at the election of the legatees. A constructive or equitable conversion is as of the date of the will or death of testator, the actual conversion as of the date of the sale of the real estate, and the reconversion may take place at any time between constructive and actual conversion. To constitute reconversion there must be an election, by the legatees if they are adults, or by a court of equity if they are infants. So that where the will gave one thousand dollars to each of testator's children, and the residue to his grandchildren, and gave power to the executor to sell his real estate after renting it for two years, and there was sufficient personalty to pay the bequests to the children and all costs, the court of equity was empowered to decree that the lands should not be sold by the executor, but be vested in the minor grandchildren.

Appeal from Daviess Circuit Court.—*Hon. Arch B. Davis*, Judge.

AFFIRMED.

*John C. Leopard* and *Alexander & Alexander* for appellant.

(1) The true intention of the testator is the cardinal rule to be observed in the construction of wills. R. S. 1899, sec. 4650; Cross v. Hoch, 149 Mo. 325. But the intention must be clearly and definitely expressed by the testator in his will, and not in contravention of any fixed rules of law; "for while it is the duty of

courts to construe wills, they cannot make them."
Garth v. Garth, 139 Mo. 456; Lehnhoff v. Theine, 184
Mo. 346. The intention which controls is that which
is manifest (1) either expressly or (2) by necessary
implication from the language of the will itself, as
viewed in the light of the situation of the testator and
the circumstances surrounding him at the time the will
was executed. Cox v. Jones, 229 Mo. 53; Meiners v.
Meiners, 179 Mo. 614. And in order that the devise
or bequest may be effectual the implication must be
a necessary one, or so strong that a contrary inten-
tion cannot reasonably be supposed to have existed in
the mind of the testator. 40 Cyc. 1389; Grant v. Hap-
good, 13 Pick. 159; Masters v. Townshend, 25 N. E.
(N. Y.) 928. In the construction of wills, the inquiry
is always, says BRANNON, J., in Wills v. Foltz, 12 L. R.
A. 283; "not what the testator intended or might have
intended to express, but what do the words used ex-
press." Where a testator uses in his will technical
words or terms, or words having a definite legal sig-
nification ("bequeath") he will be presumed to have
used them in that sense, and the will will be so con-
strued unless a clear and unequivocal intention to the
contrary is apparent from the context. And in case of
doubt the technical meaning will always be followed.
Drake v. Crane, 127 Mo. 85; Annabel v. Patch, 3 Pick.
(Mass.) 360; Sheafe v. Cushing, 17 N. H. 508. And
where the same words are employed by the testator
in different parts of his will they must be presumed
to be used always in the same sense. Elliot v. Carter,
12 Pick. 436; Stewart v. Stewart, 61 N. J. Eq. 25;
Carr v. Smith, 161 N. Y. 636. Words in a will which
are merely expressive of a desire or intention on the
part of the testator, and are merely advisory and pre-
catory in character, do not amount to a testamentary
disposition. Meyer v. Rusterholz, 55 N. E. (Ind.) 870;
Sheafe v. Cushing, 17 N. H. 508; Vincent v. Murray,
73 N. C. 15; Graham v. Graham, 48 Am. Rep. 364. And

do not control or alter express dispositions in the will, unless it is apparent from the language of the will that it was the testator's intention that such words of desire or intention should be mandatory. (2) A testator is presumed to have intended to dispose of his entire estate, and not to have died intestate as to any part of it. But the presumption against partial intestacy arises however only where an intention to pass the whole estate is expressed in some definite form. Gallagher v. McKeague, 110 Am. St. 821; Talbott v. Talbott, 1 Ky. L. R. 64; Hafins v. Hafins, 92 Pa. St. 305. Where it appears that the testator failed to dispose of part of his property by his will, the court has no power to put a different construction on the will in order to prevent a partial intestacy, but the testator must be held to have died intestate as to that part. Miller v. Worrall, 62 N. J. Eq. 776; Nixon v. Watson, 73 N. E. (Ill.) 306; Walters v. Neafus, 125 S. W. (Ky.) 167; Duffield v. Morris, 8 W. & S. (Pa.) 348; Coberly v. Earle, 54 S. E. (W. Va.) 336; Byers v. Byers, 6 Dana (Ky.), 313; Burke v. Boone, 51 Atl. (Md.) 396. (3) Where testator's intention as expressed in his will is ambiguous or obscure, such a construction should be adopted as will dispose of his property in a just and natural way, such as by equal distribution among his children. 40 Cyc. 1411, notes 10, 11; Graham v. Graham, 48 Am. Rep. 364. It is the uinversal rule, both in England and this country, that heirs are always favored in preference to those not so closely related to the testator. 40 Cyc. 1412; Miller v. Worrall, 62 N. J. Eq. 776. And hence heirs will not be disinherited by conjecture but only by express words in the will or by necessary implication arising therefrom. 40 Cyc. 1412; Guitar v. Gordon, 17 Mo. 408. The burden of showing an intention to displace the heir at law is upon those who claim against him. Augustus v. Seabolt, 3 Met. (Ky.) 155. (4) Two clauses relating alone to the disposition of certain property and to the same per-

Griffith v. Witten.

sons with respect thereto, should, in order to arrive at the intention of the testator, be construed together as one clause. ("An equal share . . . these all to have an equal share of the remaining sum.")   Driggs v. Plunkett, 105 S. W. (Ky.) 976; Barber v. Baldwin, 128 S. W. (Ky.) 1092.   (5) It is fundamental that in order to make a valid disposition of either personalty or realty, two things must always be present:   (1) a definite subject, and (2) a definite object, and uncertainty as to either is fatal.  1 Jarman on Wills (5 Ed.), 357.  (6) All undisposed of property goes to the heirs at law.  40 Cyc. 1942, and note.  And this is true even though the testator has expressed an intention that a certain person shall have only what he takes under the will.  McQueen v. Lily, 131 Mo. 9.

*A. G. Knight* for respondents.

(1) A testator is presumed to have intended to dispose of all his property, and not to have died intestate as to part of it; and the presumption is against partial intestacy.  Hurst v. Von De Veld, 158 Mo. 239; Tebow v. Dougherty, 205 Mo. 315; Simmons v. Cabanne, 177 Mo. 336; Meiners v. Meiners, 179 Mo. 614; Whitelaw v. Rodney, 212 Mo. 548; Willard v. Darrah, 168 Mo. 660.  (2) The true intention of the testator is the cardinal rule to be observed in the construction of a will.  R. S. 1899, sec. 4650; Smith v. Hutchison, 61 Mo. 83; Morris v. Hale, 102 Mo. App. 449; Reinders v. Koppleman, 94 Mo. 338; Jarboe v. Hey, 122 Mo. 341; Cross v. Hoch, 149 Mo. 325.  And the true intention must be determined, not from any particular words, phrases or clauses, but from the will as a whole.  Shumate v. Bailey, 110 Mo. 411; Walton v. Drumtra, 152 Mo. 489; Russell v. Eubanks, 84 Mo. 82; Brooks v. Brooks, 187 Mo. 476.  And irrespective of any technical rules of construction which may stand in the way of the true intention.  Dickerson v. Dickerson, 211 Mo. 483; O'Day v. O'Day, 193 Mo. 62; Grace v. Perry, 197

Mo. 550; Meade v. Jennings, 46 Mo. 49; Metz v. Wright, 116 Mo. App. 631. When the court has determined the true intention of the testator, it will, if necessary to effectuate the same, change, transpose, reject or supply the words necessary. RoBards v. Brown, 167 Mo. 457; Nichols v. Boswell, 103 Mo. 151; White v. McCracken, 87 Mo. 262; Briant v. Garrison, 150 Mo. 668. (3) Though there is no express direction in the will that the executor or anyone else shall sell the realty, still no express direction is necessary; an implied direction, when the language of the will shows an intention that the land is to be sold, is sufficient. Powell v. Woodcock, 62 S. E. 1071; Lavaggi v. Borilla, 67 Atl. 929; Flynn v. Frank, 68 Atl. 196. (4) If a will is susceptible, when fairly construed, of two constructions, one of which would render it inoperative, in whole or in part, and the other give effect to it, the duty of the court is to adopt the latter construction. 30 Am. & Eng. Ency. Law, 667. (5) The realty passes under the quasi-residuary clause. And under such a clause, realty as well as personalty will pass, even though the word "bequeath" and not "devise" is used. 2 Redfern on Wills, 448; Carr v. Dings, 58 Mo. 406; Forster v. Winfield, 37 N. E. (N. Y.) 111; Given v. Hilton, 95 U. S. 591. (6) If the land does not pass directly, and if the clause giving the "remaining sum" cannot be considered as passing the realty to the devisees directly as a part of the residue, still it is sufficient to cover the realty converted by the instructions of testator, in the view of a court of equity, from realty into money. If testator understood a direction of his will to impliedly impose on the executor the duty of converting his real estate into money, as a necessary step in dividing the property, etc., the order with the implied power of sale operated in equity to convert the realty into personalty. Harris v. Ingalls, 68 Atl. (N. H.) 34. And any direction in a will of a sale of realty and a division of the proceeds, works an equitable con-

version.   Lash v. Lash, 70 N. E. (Ill.) 1049; Starr v. Willoughby, 75 N. E. (Ill.) 1029, 2 L. R. A. (N. S.) 623; Duff v. Duff, 54 S. W. (Ky.) 711; Schlereth v. Dietrich, 66 N. E. (N. Y.) 130; Chick v. Ives, 90 N. W. (Neb.) 721; Becker v. Chester, 91 N. W. (Ia.) 87; Burr v. Sun, 29 Am. Dec. 48; King v. King, 13 R. I. 501; Becker v. Chester, 91 N. W. (Ia.) 87.   For the purpose of carrying out the manifest purpose of the will, the realty will be considered converted into personalty. 3 Redfern on Wills, 139; Handley v. Palmer, 91 Fed. 948; Scott v. Douglass, 80 N. Y. Supp. 354; Shumate v. Bailey, 110 Mo. 411; Harris v. Ingalls, 68 Atl. (N. H.) 34.   (7) Though there is no direct power of sale given the executor, or anyone else, still the same is not absolutely necessary; for there may be a power of sale implied.   Powell v. Woodcock, 62 S. E. 1071; Lavaggi v. Borilla, 67 Atl. 929; Flynn v. Frank, 68 Atl. 196; Haggerty v. Lanterman, 30 N. J. Eq. 37; Van Winkle v. Fowler, 5 N. Y. Supp. 317; Blout v. Moore, 54 Ala. 360; Going v. Emery, 26 Am. Dec. (Mass.) 645; May v. Brewster, 73 N. E. (Mass.) 546.   The realty need not be expressly devised to the executor to enable him to sell it, but a mere direction is sufficient to give him that power.   Compton v. McMahon, 19 Mo. App. 494; Encherb v. Carter, 98 Mo. 647.

GRAVES, J.—Richard G. Griffith the duly qualified executor of the last will and testament of Jackson Shuler, deceased, brought this action in the circuit court of Daviess county, to have construed the will of the said Jackson Shuler.   The will was drawn by the deceased and is not elegant either in diction or spelling.   It reads:

"*Will of Jackson Shuler His Will.*

"February the 20 1908 knowing and Bleve to Be in my Rite mind knowing the codition I am in to save trubel and Expence I Jackson Shuler make my first and Last Will and Tesamènt knowing myself to Be

sound Mind I will or Bequeth to my sun Davied Shuler One Thousand Dollars $1000.00 And I Jackson Shuler Will to or Bequeth to my Daughter Orpha Witten One thousan Dollars $1000.00 And I Jackson Shuler Will or Bequeth to my sun Zachariah Shuler One thousan Dollars $1000.00 to Have at my Death after all Debts is paid and funeral Expenses is paid and Toom Stone is Put to My grave My household goods to Be sold and Personal Propty to Be sold at Public sale horses wagon Bugy harness and some farm Impliments Plows and tools and all grain on hand and hay And the farm In Daviss County Missouri to Be Rented For the term ov 2 years to give time to Be sold and the Grundy County Land to Be Rented for 2 years to give Time to Be Sold After the 3 children gets their shers and All Expences is Paid I jackson Shuler want or Will or Bequeth an Equal Shar to Each Grand Child Living who Names is Letha Witten and Heral J. Witten and Alford Witten and Hobert Shuler and William J. Shuler and Thelma Shuler and Irean Shuler and Doris M. Shuler these all to have an Equal Shear of the Remaining Sum I Apoint R. G. Griffith to Exicut this Will this is my Last Will and Testament of Jackson Shuler Zack to have all my cloths these children is to have their Shear as they Becom of Age Zack to have the Pictures and all the Books and Bible and the little Bible Dave a Bed and Zack a Bed and Orpha a Bed and the Rest of things to be sold at Public sale This I sign knowing What I Sine and Am in my Rite Mind and Last Will and Testament.

"JACKSON SHULER

"This Will Directs that the Exicuter gives a Bond in which case he mus comply with the Pervisions of the Will and Give the Bond Before he is qualified to act as Exicutor Also the Timber land to Be sold.

"JACKSON SHULER
"NATHAN DAVISSON
"EUGENE HAM."

The petition of the plaintiff sought light from the trial court upon the following alleged uncertain and indefinite parts of the will:

"That said will is vague, uncertain and indefinite in this:

"1. As to whether or not the will requires the land belonging to said Jackson Shuler at the time of his death, to be sold by the executor after two years, or at any other time, and the proceeds distributed.

"2. As to whether or not the grandchildren mentioned in the will are to receive all of the personal property after the payment of the legacies of one thousand dollars each to his three children named in the will.

"3. As to whether or not it is the intent of said will to give to said grandchildren each the sum of one thousand dollars out of the personal property.

"4. As to whether or not the will requires the sale of all the land by the executor after two years and the distribution of the proceeds of sale among the children and grandchildren of said deceased, in any ratio or proportion.

"5. As to whether or not the grandchildren mentioned in the will participate to any extent in the real estate or proceeds thereof, owned by the deceased at the time of his death.

"6. As to whether or not said grandchildren participate in any part of the estate of said deceased, except personal property and that only, after the payment of the legacies of one thousand dollars each to Orpha Witten, David Shuler and Zachariah Shuler and after payment, out of said personal property, for expenses of last sickness, tombstone, debts and costs of administration.

"This plaintiff further says that a dispute has arisen between the heirs and legatees under said will as to the construction thereof in the particulars above set forth, and that a further question has been raised

as to the right of this executor to distribute and pay to the defendant, Laura L. Shuler, the widow of David Shuler, deceased, the share, if any, or any part thereof, of said David Shuler in said estate; that the defendants are legatees and beneficiaries under said will and are the sole persons named therein as such; that they constitute all of the children and grandchildren, heirs, devisees and legatees of said Jackson Shuler, deceased; that by reason of the vague, indefinite and uncertain provisions of said will, and of the difference and disputes that have arisen concerning the consideration thereon, this plaintiff cannot proceed with the administration of said estate and the distribution of the assets thereof, without the construction of said will and the guidance and direction of this court.''

Under the evidence it appears that this will was duly probated, and the inventory of the estate shows personal property to the amount of eight thousand dollars. Outside of this formal proof the case was submitted upon the will and the following admissions:

''It is admitted that Jackson Shuler died on April 5, 1908.

''It is admitted that Richard G. Griffith is the duly named, appointed, qualified and acting executor of the will of Jackson Shuler, deceased.

''It is agreed that at the time of his death Jackson Shuler was the owner of 167 acres, more or less, in Daviess county, Missouri, described as follows:

''The east half of the southwest quarter of section 11, township 61, range 26, and the west half of the southeast quarter of section 11, township 61, range 26; also a strip 10 rods wide, commencing in the southwest corner of the east half of the southwest quarter of section 11, township 61, range 26, and running north far enough to make 7 acres; in all 167 acres, more or less, in Daviess county.

''And the following described land in Grundy county, Missouri:

"Twenty-four acres situated in the northwest quarter of the northeast quarter of section 15, township 61, range 25.

"Timber land in Grundy county, in section 8, township 61, range 25, containing 14.51 acres, more or less.

"It is admitted that at the time of his death, Jackson Shuler was possessed of personal property of the value between seven and eight thousand dollars.

"It is admitted that the wife of Jackson Shuler was dead at the time of his death.

"That he left surviving him three children, Orpha Witten, a daughter, David Shuler and Zachariah Shuler, his two sons.

"It is admitted that David Shuler died after the death of his father and that David Shuler had no children.

"It is admitted that Orpha Witten was the wife of Harry Witten, and had three children only, that is to say, Letha Witten, Harold J. Witten and Alfred Witten.

"It is admitted that Zachariah Shuler had five children only, that is to say, Hobart Shuler, William J. Shuler, Thelma Shuler, Irene Shuler and Doris M. Shuler; and it is further admitted that the name appearing to be Orean or Irean in the will is identical with Irene Shuler, and that thereby the testator intended to name his grandchild, Irene Shuler.

"It is admitted that Jackson Shuler left surviving him no other children or descendants of a deceased child; that the children of Orpha Witten and Zachariah Shuler, aforesaid, were and are his only grandchildren.

"It is admitted that Letha Witten, Harold J. Witten, Alfred Witten, Hobart Shuler, William J. Shuler, Thelma Shuler, Irene Shuler and Doris A. Shuler are all minors, under legal age.

"That all parties, plaintiff and defendants, in this case live in Daviess, Harrison and Grundy counties, Missouri.

"It is admitted that David Shuler died without issue, leaving a will, by the terms of which all of his property passes to his wife, Laura L. Shuler.

"It is admitted that a controversy has arisen between the legatees and executor and between the legatees, as between themselves, as to the construction of this will.

"It is admitted that the Heral J. Witten, as written in the will of Jackson Shuler, means and was intended for Harold J. Witten; and it is admitted that the name Alford Witten, written in the will, was intended for and ought to be Alfred Witten; and that the name Hobert Shuler was intended to be and should be Hobart Shuler. It is admitted that where the name Doris M. Shuler appears in the will it was intended to be and ought to be Doris A. Shuler.

"It is admitted that at the time of making the will in evidence Jackson Shuler was on equally friendly terms with all his children and grandchildren named as beneficiaries in said will."

By its judgment the circuit court thus construed said will:

"The court finds that said Jackson Shuler intended by his last will and testament to, and that he did bequeath to David Shuler, his son, one thousand dollars and one bed; that he intended to and did bequeath to Orpha L. Witten, his daughter, one thousand dollars and one bed; that he intended to and did bequeath to Zachariah Shuler one thousand dollars and all the clothing of said Jackson Shuler and his pictures and his books and two Bibles and one bed; that all the rest, residue and remainder of his personal property, after payments of debts, funeral expenses and a monument or tombstone for his grave and the cost of administration and the legacies aforesaid, was by said

Jackson Shuler intended to be bequeathed, and he did, by said will, bequeath such rest, residue and remainder to his grandchildren, Letha Witten, Harold J. Witten, Alfred Witten, Hobart Shuler, William J. Shuler, Thelma Shuler, Irene Shuler and Doris M. Shuler share and share alike, that is to say, one-eighth to each.

"The court further finds that the said last will and testament of said Jackson Shuler, deceased, does not authorize the real estate belonging to him at the time of his death to be sold by the executor; that said executor has no power under said will to sell the same; that said Jackson Shuler intended by his said will and testament and did thereby devise, all the real estate of which he died seized to his said grandchildren, to-wit, Letha Witten, Harold J. Witten, Alfred Witten, Hobart Shuler, William J. Shuler, Thelma Shuler, Irene Shuler and Doris M. Shuler share and share alike, that is to say, one-eighth to each of them.

"It is therefore ordered, adjudged and decreed by the court that said last will and testament of said Jackson Shuler, deceased, be and the same is hereby construed, defined and adjudged to be in accordance with the findings aforesaid; that David Shuler, son of said Jackson Shuler, take under said will the legacy therein provided of one thousand dollars and one bed; that his daughter, Orpha L. Witten, take under said will the legacy therein provided for her of one thousand dollars and one bed; that his son, Zachariah Shuler, take under said will the legacy therein provided of one thousand dollars and all the clothing of said Jackson Shuler and his pictures and books and two Bibles and one bed; that Richard G. Griffith, executor of the last will and testament, is ordered and directed by the court to pay to said David Shuler, Orpha L. Witten and Zachariah Shuler or their legal heirs or legal representatives the legacies aforesaid.

"It is further ordered by the court that the debts of said Jackson Shuler, if any, his funeral expenses, and a monument or tombstone for his grave and the costs of administration of his estate shall in addition to the legacies aforesaid be paid and defrayed out of the personal property belonging to said estate, if sufficient, thereto, by said executor, and that the rest, residue and remainder of said personal property, after having paid the debts, funeral expenses, for a monument or tombstone for the grave of said Jackson Shuler, and the cost of administration of his estate and the legacies aforesaid, shall by said executor be paid to and distributed among the grandchildren of said Jackson Shuler, deceased, to-wit: Hobart Shuler, William J. Shuler, Thelma Shuler, Irene Shuler, Doris M. Shuler, Harold J. Witten, Alfred Witten, and Letha Witten share and share alike, that is to say, one-eighth to each. And it is further ordered by the court that upon the expiration of two years from the date of the death of said Jackson Shuler he shall turn over all of the real estate of which said Jackson Shuler died seized to the grandchildren of said Jackson Shuler, deceased, to-wit, Letha Witten, Harold J. Witten, Alfred Witten, Hobart Shuler, William J. Shuler, Thelma Shuler, Irene Shuler and Doris M. Shuler, who shall take said real estate share and share alike, that is to say, one eighth to each, and it is further ordered by the court that the cost of this proceeding be taxed against and paid by the estate of said Jackson Shuler, deceased."

All of the defendants seem satisfied with the judgment *nisi* except Laura L. Shuler, the widow of David Shuler, who has appealed. She filed a separate answer, but its terms need not be set out further than to say that it sufficiently raises the questions urged by her in this court. This states the case.

I. Laura L. Shuler, the appealing defendant, is the wife and devisee by last will of the son David

Shuler who died after the father, Jackson Shuler. She contends (1) that the purported will is so dense, dark and vague as not to be susceptible of construction, and that by reason of this fact it is void, and (2) that if susceptible of construction, it should be so construed as to say Jackson Shuler died intestate as to his real estate. These are the two principal contentions raised by her answer, and upon that pleading and the admitted facts, she seeks our judgment.

If as a fact a paper writing purporting to be the last will and testament of a person, is so vague, indefinite and uncertain, that a court cannot by reasonable rules of construction determine the real intent and purpose of the deceased, then such paper writing should be declared void. The legal proposition urged by appellant this court has and will recognize, but a sufficient answer here is that we think this will susceptible of construction. It reveals the illiteracy of the writer, but in it all we think there is a well-defined purpose expressed, and more, that such purpose contemplated the disposition of all his property. We therefore decline to follow the lead of appealing defendant to declare the paper writing void.

Uncertainty.

II. Now going to the instrument itself, what was the intent of the testator? The cardinal principle of will construction is to get the real intent and purposes of the testator. These must be gathered from the instrument itself, if such be possible, but in so gathering the intent and purpose of the testator the whole instrument must be considered. It must, in other words, be considered from its four corners. Of course, ambiguity appearing, if there is trouble in getting at the intent from the instrument itself, then pertinent matters *aliunde* may be considered in determining the intent. These fixed

Rule of
Construction.

rules of construction cannot be gainsaid, and citation of cases would be but to encumber, rather than to elucidate, an opinion.

Reverting to the instrument itself. It is true there isn't a punctuation mark throughout, yet there is a rather mixed use of capital letters, which gives us some idea of the beginning and ending of sentences. From the instrument it is clear to our minds that the purpose of the testator was to dispose of all his property, both real and personal. We are further impressed with the idea that the testator had in mind the sale of his real estate, although there are no express words directing the executor to sell. The instrument says: "And the farm in Daviss County Missouri to Be Rented For the term of 2 years to give time to be sold and the Grundy County Land to Be Rented for 2 years to give Time to Be Sold." Again at the close of the will are the words "the timber land to be sold." The admitted facts show that there were farm lands in both Grundy and Daviess counties, and that there was also a small tract of timberland. Taking these expressions in the will as indicative of a purpose, it appears to us that the idea of the testator was to reduce all his belongings, except the small individual bequests, to cash, and then after paying the specified legacies of $1000 to each of his three children, and the expenses of the administration, debts and tombstone cost, the residue should be equally divided between the eight grandchildren named, such grandchildren to have their respective shares as they reached their maturity. It is true that he used the word "children" in one place, where he should have said grandchildren, but the entire context shows that he was speaking of grandchildren. Not only does the context so speak, but *aliunde* it appears that there were none of his own children under age, and he must have used the word "children" for grandchildren, having reference by the use of such words

*Will: Real Estate: Power to Sell.*

solely to the ages of the beneficiaries, rather than the exact relationship to him. If, as we think, the purpose of the testator was to dispose of his entire estate, then does the judgment *nisi* sufficiently effectuate that purpose, and along the lines of distribution above indicated? We think so. That testator had in view the disposition of his whole estate is evident from his expressed idea that there should be a sale of it at the end of the two years of rental period. If he contemplated the sale of his lands and personal property and thus the reduction of his entire estate to cash, it then becomes evident that he only desired his own children to have the sum of $1000 each out of his estate, leaving the residue of the entire estate to be divided among his eight grandchildren. We cannot agree with counsel for appellant, when they say that there is nothing upon the face of this will to indicate the intent of the testator to dispose of his entire estate. Why talk about selling the land at all, if there was no purpose to dispose of the land by the will? We are not even driven to the principle which usually accompanies wills, i. e., that it is presumed in the construction of wills that the testator intended to dispose of his entire estate. [Tebow v. Dougherty, 205 Mo. l. c. 321, and cases cited therein.] In the instrument before us, awkwardly drawn as it is, we have clearly expressed ideas of disposing of the entire estate, and for the purpose, as expressed in the will, "to save trubel and Expence." The spelling and capitalization may be bad, but the ideas are good.

III. The trial court held that there was no power in the executor to sell the real estate. There is no express power given, although the intent of the testator is clear. In such case was the trial court right in decreeing the real estate to belong to the grandchildren? We are inclined to the view that this part of the decree can be

**Real Estate:**
**Equitable**
**Conversion.**

upheld upon the doctrine of equitable conversion. In other words, if it is clear that the testator intended that all his estate be converted into cash and then distributed under the will, then in equity the real estate will be considered as cash for the purpose of the will, and reconverted into land at the option or election of the beneficiaries. [Nall v. Nall, 243 Mo. 1. c. 256-7.]

In Harris v. Ingalls, 74 N. H. 1. c. 343, it is said:

"If he understood his order to the executors impliedly imposed upon them the duty of converting his real estate into money as a step necessarily to be taken in dividing the property into four equal parts, the order with the implied power of sale operated in equity to convert the property from realty to personalty (Perkins v. Coughlan, 148 Mass. 30; Salisbury v. Slade, 160 N. Y. 278, 288, and authorities cited; Penfield v. Tower, 1 N. D. 216) and the use of the word 'bequeath' was technically correct." And in the same case at page 343, it is further said: "Upon all the facts now presented, it appears reasonably clear that the testator intended, by the provisions of the will, to impose upon the executors the duty of converting the residue of the property, real, personal, and mixed, into money as a necessary incident of its division into four equal parts, and the duty of distributing the parts among the legatees as set forth in the residuary clause of the will; and the plaintiffs are so advised. As was said in the former opinion, if the legatees all prefer to take the real estate and hold it in common and so elect, the executors will not violate their duty by allowing the legatees to so take the property. Indeed, if the legatees are all *sui juris,* it would seem that they have the right to elect to reconvert the property to real estate. [Sears v. Choate, 146 Mass. 395; Greenland v. Waddell, 116 N. Y. 234; Mellen v. Mellen, 139 N. Y. 210; Huber v. Donoghue, 49 N. J. Eq. 125; Lash v. Lash, 209 Ill. 595; Boland v. Tiernay, 118 Iowa, 59; Bank of Ukiah v. Rice, 143 Cal. 265; Craig v. Leslie, 3 Wheat.

(U. S.) 563; Pom. Eq. Jur., par. 1175; 1 Sto. Eq. Jur., par. 793.]"

This Harris case in some respects is very much like the case at bar. In the case at bar there is a direction to pay each of the children $1000, but these bequests are not restricted to the sale of the personal property. Under this will, had the personal property proven insufficient, there can be no question that such legacies could have been paid out of the real estate, and this is an additional circumstance tending to show an intent on the part of the testator to have his real estate sold, but only a slight circumstance when we go to the proof *aliunde* as to the value of the personal estate. But going back to the doctrine of "equitable conversion" and "reconversion by election" it is sufficient to say that the facts of this case bring the decree of the chancellor below well within the limits of the rule as to "equitable conversion" and "reconversion by election" as discussed and held in Nall v. Nall, supra. If, as we hold, the will contemplated the sale of the real estate, then there was a conversion in equity of the land into money at the death of the testator.

In the case of Chick v. Ives, 90 N. W. (Neb.) l. c. 754, it is said:

"It seems clear that the will, by a fair construction of its terms, and every implication, worked an equitable conversion of the real estate of the testator into money. [Clarke v. Clarke, 46 S. C. 230; Farmer v. Spell, 11 Rich. Eq. 547; Perry v. Logan, 5 Rich. Eq. 202; Moore v. Davidson, 22 S. C. 94; Jaudon v. Ducker, 27 S. C. 295; Penfield v. Tower, 1 N. D. 216; Dodge v. Williams, 46 Wis. 70; Chandler's Appeal, 34 Wis. 505; Dodge v. Pond, 23 N. Y. 69; Craig v. Leslie, 3 Wheat. 563; Bank v. Paulsen, 57 Neb. 717; 1 Pom. Eq. Jur., p. 413.] The learned judge of the district court was therefore mistaken in his construction of the will, and his view of the law to be applied to its provisions. We therefore hold that under the will in question there

was an equitable conversion of the testator's real estate into money at the time of his death.''

The will under construction in this case, like the case at bar, contained no express power or direction to sell, but left the intent to be gathered from the context. It will be observed the court held the equitable conversion to have been of the date of the testator's death.

In Becker v. Chester, 115 Wis. 1. c. 116, the Wisconsin court thus puts it:

''The general principles to be satisfied in determining whether equitable conversion of personal property into realty or realty into personalty was wrought in any given case, are too well understood to call for any extensive discussion of them. Equity deems that done which ought to be done. Therefore, if a testator, in a valid testamentary way, unmistakably directs, expressly or by unmistakable implication, that his real estate shall be treated in the administration of his estate as personalty, equity will deem that purpose impressed upon the property immediately upon the taking effect of the will, and rules regarding personal property will govern.''

To like effect are Lash v. Lash, 209 Ill. 595, and Starr v. Willoughby, 218 Ill. 485.

The ''equitable conversion'' of the real estate into money continues until such time as there is an actual conversion, or until by election there has been a ''reconversion.'' This reconversion may take place at any time prior to the actual conversion. The constructive conversion or ''equitable conversion'' is as of date of the will or death of testator; the actual conversion is as of the date of the sale of the real estate. [Nall v. Nall, supra, and cases therein cited and reviewed.] As stated in the Nall case the reconversion may take place at any time during the period of constructive conversion and prior to actual conversion. In the case of adults there must be an election, but this election

may come at any time before actual conversion. In the case of infants, as here, the court of equity may make the election for them, if the necessities of the case so require it, and the interest of the minors would thereby be best subserved. In the instant case the real beneficiaries are the eight minors. Under the will and the showing made in this case, they would be entitled to all the proceeds of this land, if it were sold. Under such facts the trial court had the power to elect for them to reconvert the property into land and decree that they so hold it. Upon this theory of the law the judgment *nisi* is correct. Let the judgment be affirmed.

All concur.