JOHN B. BROWN, Appellant, *vs.* SADIE OLIVER MINER *et al.* Appellees.

*Opinion filed February 21, 1914.*

1. WILLS—*authority of executor to sell land and divide proceeds may be conferred by implication.* If the provisions of the will are so clearly written as to leave no doubt of the testator's intention to have his lands converted into personal estate, the authority of the executor to sell the real estate and divide the proceeds may be implied and the doctrine of equitable conversion applied.

2. PARTITION—*when purchaser of devisee's interest is not entitled to partition.* Where it clearly appears from the whole will that the testator intended to provide for the support and maintenance of his wife for life and that after her death the lands should be sold by the executor and certain specific legacies paid, after which the proceeds should be divided equally among certain named devisees, the doctrine of equitable conversion applies, and one who purchases the interest of a devisee acquires no title to the land and cannot maintain a bill for partition.

3. The court construes the language of the will in this case, and holds that the fee of the lands did not vest in the devisees subject to their mother's life estate, but that there was an equitable conversion of the land into personal estate.

APPEAL from the Circuit Court of Warren county; the Hon. ROBERT J. GRIER, Judge, presiding.

M. G. SOULE, for appellant.

DAUGHERTY & MARSH, for appellees.

Mr. CHIEF JUSTICE COOKE delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Warren county sustaining a demurrer to appellant's bill for partition and dismissing the bill for want of equity.

Robert Oliver died testate January 10, 1904, seized of 160 acres of land in Warren county. Omitting the formal parts, his last will and testament, which was probated in Warren county, is as follows:

"*First*—I make and bequeath to my wife, Matilda Oliver, all of my property, both real and personal, together with all moneys and credits of which I may be possessed at my death, to have and to hold the same during her natural life, in trust, and at her death whatever may remain to be disposed of as hereinafter provided.

"*Second*—It is my will that my wife, Matilda Oliver, shall have all the rents, proceeds and profits arising from the use and management of said real and personal property, to be disposed of, or so much as may be required, as hereinafter provided.

"*Third*—It is my will that from the said proceeds, rents and profits of said real and personal property, my said wife, Matilda Oliver, use all that she may require during her life for her own support and to maintain and support my son Walter C. Oliver during his minority, should he remain with her on the farm and be obedient to her commands; and it is further my will that out of said rents, proceeds and profits, provision shall be made to pay all funeral expenses and any and all other just indebtedness which may be owing by me at my death.

"*Fourth*—It is further my will that no real estate shall be sold or disposed of before my son Walter C. Oliver shall arrive at the age of twenty-one; and it is further my will that when said real estate is sold or disposed of, my son John G. Oliver shall first be paid the sum of $200 per year for labor performed for me, beginning June 25, A. D. 1898, and up to the day of my death; and it is further my will that my daughter Minnie F. Oliver shall next be paid out of said sale or disposal of said real estate the sum of $100 per year for services performed for me from June 21, A. D. 1900, and up to the date of my death.

"*Fifth*—It is further my will that when said real estate shall be sold or disposed of, and after the performance of the previous conditions of this will, there shall be an equal division of all the lands, rents or proceeds resulting from the sale of said land, or of personal property remaining at the death of my wife, Matilda Oliver, between my children, share and share alike, to-wit, Sadie

Oliver Miner, John G. Oliver, Fred J. Oliver, Minnie F. Oliver, Archie H. Oliver and Walter C. Oliver.

"*Sixth*—And it is further my will that if any one or more of my children shall contest this will or make trouble over the same, he or she or they shall forfeit their right to said portion.

"*Seventh*—And I do hereby declare this my°last will and testament, hereby revoking all former wills, and do hereby appoint my son John G. Oliver as my executor, without bond, to carry out the provisions of my will until and after the death of said Matilda Oliver and until all provisions of this will is fully carried out."

John G. Oliver qualified as executor and was discharged as such January 25, 1906. Matilda Oliver, the widow, died September 11, 1908, and Walter C. Oliver became of age August 16, 1911. On December 8, 1908,.Archie H. Oliver conveyed to John B. Brown, the appellant, by warranty deed, an undivided one-sixth part of the real estate of which Robert Oliver died seized. By the same instrument he also assigned to appellant all his interest in the estate of his father which he acquired under the will. Appellant filed his bill for partition February 20, 1913, in which he set out the will of Robert Oliver and the conveyance to him by Archie H. Oliver, and asked for partition of the real estate upon the theory that the remainder vested in the children of Robert Oliver upon his death.

The only question to be determined is, whether under this will the fee vested in the children of Robert Oliver subject only to the life estate of their mother, or whether there was an equitable conversion of the realty into personalty by an implied direction to the executor to sell the real estate and divide the proceeds.

It will be noted that there is no express direction or authority given the executor by the will to sell the real estate and divide the proceeds. This authority may, however, be conferred by implication and the doctrine of equitable conversion applied if the provisions of the will are so clearly written as to leave no doubt of the intention of the testator to have his realty converted into personal estate. *Hale v. Hale,* 125 Ill. 399.

261 – 35

By the first clause of his will the testator bequeathed to his wife a life estate in all his real and personal property and provided that at her death whatever remained should be disposed of as thereinafter provided. While this clause states that this bequest and devise is made in trust, it can readily be perceived from the first three clauses of the will that no trust was, in fact, created, but the wife was given merely a life estate in the real and personal property, subject to the payment of the debts and funeral expenses of the testator and the maintenance of Walter C. Oliver during his minority, in case he should remain with her on the farm and be obedient to her commands. In the fourth clause the testator provides that no part of his real estate shall be sold or disposed of before the son Walter C. Oliver shall arrive at the age of twenty-one years, and then provides that when his real estate is "sold or disposed of," his son John G. Oliver shall first be paid $200 per year from June 25, 1898, to the day of testator's death, and that his daughter Minnie F. Oliver shall next be paid, "out of said sale or disposal of said real estate," $100 per year from June 21, 1900, to the day of testator's death.

It is contended by appellees that from the language of the fourth clause, together with the language used in the fifth clause of the will, which will be hereinafter noted, implied authority and direction are necessarily conferred upon and given to the executor to sell the real estate of the testator. Appellant contends that a direction to sell is not necessarily implied from the language used in this clause, his position being, that the words "disposed of" are not synonymous with the word "sold" but have a broader meaning, and that as these words are used in the disjunctive and as every word used must be given a meaning if possible, it should be held that the testator intended a disposition of his lands other than by a sale. The theory of appellant is that the testator had in mind the disposition of his land among his children by an amicable division of the same

among them or by a proceeding in partition, and that the
sale contemplated by the will was one which might be made
by the children in case they should see fit to sell the lands
devised to them instead of making partition. Appellant fur-
ther contends that by the language used in reference to the
bequests to John G. Oliver and Minnie F. Oliver in the
fourth clause of the will the testator sought to make the
payment of these bequests a lien upon all the real estate,
which might be enforced after the death of Mrs. Oliver and
when Walter C. Oliver had arrived at the age of his major-
ity. In support of this contention appellant points out that
by the fifth clause the testator provides that when his real
estate should be sold or disposed of, there should be an
equal division of "all the lands, rents or proceeds resulting
from the sale of said land" among his children.

The use of the language "an equal division of all the
lands" is confusing, and makes it impossible, in arriving at
the true intention of the testator, to give every word in the
will its usual and customary meaning. To give the words
"sold or disposed of," and "sale or disposal of," the con-
struction contended for by appellant would be inconsistent
with his theory of the true construction of the whole will,—
that the testator devised the remainder of his real estate to
his children, and that the sale or disposition mentioned re-
fers to a sale by his children or to a partition of the real
estate among them. If that is the correct construction, then
the testator effectively and finally disposed of his real estate
to his children at his death and there was no further dis-
posal to be made. It would be an illogical construction to
place upon this will to say that the testator had thus finally
disposed of his real estate and yet contemplated some in-
definite future disposition of it.

By providing that "when said real estate is sold or dis-
posed of my son John G. Oliver shall first be paid" the sum
of $200 per year, and "my daughter Minnie F. Oliver shall
next be paid out of said sale or disposal of said real estate"

$100 per year, the testator undoubtedly intended that the real estate should be sold and these payments made from the proceeds, and this clause of the will admits of no other construction. This construction is strengthened, rather than weakened, by the language of the fifth clause, which provides that when the real estate shall be sold or disposed of, and "after the performance of the previous conditions of this will," there shall be an equal division. The full performance of the previous conditions of the will includes the payment to John G. Oliver and Minnie F. Oliver of the special bequests to them. The mere creation of an enforcible lien on the realty does not satisfy these provisions. These payments, according to the fourth clause, are to be made out of the "sale or disposal" of the real estate. The payments could only be made in cash, and cash could only be received as the result of a sale. It is evident that the testator used the words "sold" and "disposed of," and "sale" and "disposal of," as synonymous, as the only disposal which could result in the receipt of cash would be a sale. That he intended the executor to make such sale and fully carry out every provision of his will is further evident from the seventh clause, which provides that the executor named shall carry out the provisions of the will until and after the death of Matilda Oliver and until all the provisions of the will are complied with. This is the only reasonable construction which can be given to the language used in this will. Under this construction it is necessary either to reject entirely the word "lands," as used in the fifth clause, or to construe it as meaning proceeds from the sale of lands.

The decree of the circuit court sustaining the demurrer and dismissing the bill for want of equity is affirmed.

*Decree affirmed.*