[No. 2712. Jan. 21, 1924.]

CITIZENS' NAT. BANK OF ALBUQUQERQUE v. FIRST NAT. BANK OF ALBUQUERQUE et al.

SYLLABUS BY THE COURT

1. It is well settled that the owner of property may, by way of will, and in many other ways, change the nature or character of his property, so that thenceforth it partakes of the character which the owner desires. The intention of the testator is immediately upon his death effectuated by the application of the equitable doctrine or maxim that "Equity regards as done that which ought to be done."

2. In determining whether real estate has by the terms of a will been converted into personal property, the intention of the testator is of paramount and controlling importance. This intention, when correctly and certainly ascertained, governs in all cases.

3. The intention of the testator to convert the property may be implied even in the absence of express mandatory intention, when correctly and certainly ascertained, governs words in the will. This implied intention, when properly ascertained, becomes as mandatory on the executors and trustees, and as effectual to work conversion, as if so expressed in the will .

4. The doctrine of equitable conversion is a rule of necessity, not of convenience. It is a rule of necessity in the sense that, when a person has exercised a power over his property, as he has a right to do, by will or deed, the change in the character of the property which he has directed becomes binding upon all persons thereafter concerned with the same.

5. Where a will devises property to trustees with directions to convert the same into money, and distribute the proceeds thereof to beneficiaries named in the will, the trustees take the entire title, and the beneficiaries take only a gift of money.

6. Before merger can take place there must be both a legal and an equitable estate uniting in the same person.

7. Merger is not favored either at law or in equity, and is largely a question of intention on the part of the person in whom the two estates unite. This intention is not fixed or unchangeable until some one having the right to do so calls the same in question.

8. The mere giving to a trustee, having in charge moneys belonging to a beneficiary of notice of a levy of execution by the sheriff, without notifying said trustee to appear before the court out of which the execution issues to answer concerning the matter, is ineffectual, under the provisions of section 2192, Code 1915.

Error to District Court, Bernalillo County; Brice, Judge.

Action by the Citizens' National Bank of Albuquerque against the First National Bank of Albuquerque and others. Judgment for defendants, and plaintiff brings error. Affirmed.

Simms & Botts, of Albuquerque, for plaintiff in error.

The legal title of William J. Zirhut, one of the two trustees, and his equitable title, held as beneficiary of

the trust to the extent of one half of the trust estate, merged, and he became seized of the fee simple title to an undivided one half interest in the real estate described in the amended and supplemental complaint.

Under this point the general rule for which we are contending is that where the legal and equitable estates become vested in the same person, and the legal estate is equally extensive with or more extensive than the equitable estate, the latter will be absorbed and merged in the former. Wills v. Cooper, 25 N. J. Law 156; Preston on Merger, 6, 39, 88, 89, 315, 441; Kent's Com. 100; Hill on Trustees, 252; Bolles v. State Trust Company, 27 N. J. Equity 308; Washburn v. Burns. 5 Vroom 19; Wyckoff v. Gardner, Spencer 556; Wills v. Cooper, 1 Dutcher 137; Mason v. Mason's Ex'rs. 2 Sandf. Ch. 433; Elle v. Young, 4 Zab. 783; Shaw v. Humphrey, 1 Harr. 26; Micheau v. Crawford, 3 Halst. 102; Hopping v. Gray, 82 N. J. Eq. 502; Woodward v. James, 115 N. Y. 357; Tiedeman's Real Property, Sec. 512; Sherlock v. Thompson, 167 Ia. 1; Simonds v. Roe, 180 N. Y. Suppl. 677; In Re Mays Estate, 185 N. Y. Suppl. 284; Freeman on Executions, Sec. 173; Freeman on Judgments, Sec. 358; Swisher v. Swisher, 157 Ia. 55.

Under the will of Annie Zirhut no equitable conversion of the real estate devised thereby was effected. Haward v. Peavey, 128 Ill. 430; Anewalt's Appeal, 42 Pa. St. 414; Swisher v. Swisher, 157 Ia. 55; Hanson v. Hanson, 149 Iowa 84; Darlington v. Darlington, 28 Atl. 503; In re Fox's Estate, 52 N. Y. 530; James v. Thockmorton, 57 Cal. 368; Neely v. Grantham, 58 Pa. 433; Cooke v. Platt, 98 N. Y. 35; 3 Pomeroy's Equity (3rd Ed.) Sec. 1160; 6 R. C. L. 1065, Secs. 1 and 2; 3 Pom. Eq. 2304, Secs. 1159 and 1160; 13 Corpus Juris 864, Sec. 31.

It should be held that under the will an equitable conversion was effected, then the interest of William J. Zirhut became personal property in the hands of the executors, which was caught by the levy of plaintiff's execution, and the First Savings Bank & Trust

Company is liable in damages to the plaintiff for having wrongfully paid the same out in the face of said levy.

A. B. McMillen and Lawrence F. Lee, both of Albuquerque, for defendants in error.

All the authorities hold that in order to permit merger, the legal and equitable title to the real estate must vest in the same person in the same right. There is no controversy in the authorities upon this point. Here the legal estate was in Zirhut and the Trust Company jointly as executors. There was no equitable estate whatever in Zirhut as to the real estate. The interest was expressly limited to the trust fund. Pratt v. Bank, 33 A. D. 201, and note 202; James v. Morey, 14 A. D. 475.

The doctrine of merger is a common-law doctrine which takes effect upon the conditions named in point two, but the doctrine of merger is not favored in equity and will never be permitted except for special reasons, and to promote the intention of the party holding both the equitable and legal estates in the same property and in the same right, and therefore a court of equity will exercise its powers to protect the equities of the parties and to prevent a merger that would otherwise take place at law. Hutchins v. Carleton, 19 N. H. 487; Bell v. Woodward, 34 N. H. 90; Clark v. Clark, 56 N. H. 105; Clos v. Boppe, 23 N. J. Eq. 270; Andrus v. Vreeland, 29 N. J. Eq., 394; Binsse v. Page, 1 Abb. Dec. 138; Sheldon v. Edwards, 35 N. Y. 279; Smith v. Holbrook, Sheld. 474; Morgan v. Hammett, 34 Wis. 512; Aiken v. Milwaukee, etc., Ry., 37 Wis. 469; Note to Sneed's Executors v. Hamn, 15 A. D. 78, 83 & ca. ci.; Dougherty v. Jack. (Pa.) 30 A. D. 335-337; Smith v. Roberts, 91 N. Y. 470; James v. Morey (N. Y.) 14 A. D. 475, 478; In re Washburn's Estate (Cal.) 106 Pa. 415, 420; Donald's v. Plumb, 8 Conn. 447; Campbell v. Carter, 144 Ill. 286; Hospes v. Almstedt, 13 Mo. App. 270, affirmed 83 Mo. 473; Chapman v. Cooper, 32 N. Y. 543; Bascomb v. Smith, 34 N. Y. 320; Maloney v. Horan (N. Y.) 10 A. R. 335; Moore v. Luce, 29 Pa. St. 260; Cole v. Beale. 89

Ill. App. 426; Chase v. Van Meter, 39 N. E. 455; Wallace v. Blair, 1 Grant Cas. 75; Earle v. Washington. 89 Mass. 95; Executors of Van Ness v. Jacobus et al., 17 N. J. Eq. 154.

If we were otherwise uncertain in regard to the doctrine of merger, the character of the estate which William J. Zirhut received under his mother's will is determined by the doctrine of equitable conversion.

"Where a testator gives the proceeds of real estate or directs real estate to be sold and divided among certain beneficiaries, or conveys land to executors or trustees to be sold and divided among named beneficiaries, the doctrine of equitable conversion applies and the real estate is treated as personal property from the date of the death of the testator."

Craig v. Leslie, 16 U. S. 563; Germain v. Baltes, 113 Ill. 29; Gedges v. Western Baptists etc., 52 Ky. 530; Church Extension etc., v. Smith, 56 Md. 362; Van Ness v. Jacobus, 17 N. J. Eq.. 153; Forsythe v. Forsythe, 46 N. J. Eq., 400; 19 Atl. 119; King v. Woodhull, 3 Edwards (Ch.) 79; Martin v. Sherman, 2 Sanford's Ch. 341; Johnson v. Bennett, 39 Barber 237; Hayes v. Gourle, 1 Hun. 38; 3 Thompson & C. 115; Brink v. Masterson, 4 Dem. Sur. 524; In re. Tillman, 86 Hun. 47; 33 N. Y. Sup. 194; Smith v. McCreary, 38 N. C. 204; Beatty v. Byers, 18 Pa. St. 105; Appeal of Dundas, 64 Pa. St. 325; Davenport v. Kirklan, 156 Ill. 169; 40 N. E. 304; Ramsey v. Hamlin, 33 Fed. 425; Roy v. Monroe, 47 N. J. Eq., 356; 20 Atl. 481; Power v. Cassidy, 54 How Pr., 4; Parker v. Linden, 44 Hun. 518; Phelps v. Phelps, 28 Barb. 21; Spencer v. See, 5 Redf. Sur. 442; Fahnestock v. Fahnestock, 152 Pa. St. 56; 25 Atl. 313; In re. Stallman, 2 Pa. Distr. 265; Clark v. Clark, 46 S. C. 230; 24 S. E. 202; Webster v. Morris, 66 Wis. 366; 28 N. W. 353, 57 A. R. 278; In re Stevenson, 2 Delaware Chancery, 197; Underwood v. Curtis, 127 N. Y. 523; 28 N. E. 585; Wurtz v. Page, 19 N. J. Eq., 365; Crane v. Bolles, 49 N. J. Eq., 373; 24 Atl. 237; Stag v. Jackson, 1 N. Y. 206; Pomeroy's Equity Jurisprudence, Section. 1164.

The estates or interests which result from the doctrine of conversion are entirely equitable in their nature and equity has an exclusive jurisdiction to maintain and protect such interests. 1 Pomeroy's Equity Jurisprudence, Section 167. See also Section 371.

OPINION OF THE COURT

PARKER, C. J. On July 1, 1916, one Annie Zirhut made her last will and testament, which, following her demise, was, on April 17, 1917, duly admitted to probate by the probate court of Bernalillo county. The will provides, among other things, the following:

"1. I hereby nominate and appoint William John Zirhut, of Albuquerque, New Mexico, and the First Savings Bank & Trust Company, of Albuquerque, New Mexico, to [be] the executors of this, my last will and testament, and I hereby revoke all former wills by me made.  *  *  *

"5. I give, devise and bequeath unto my executors William John Zirhut and the First Savings Bank & Trust Company, of Albuquerque, New Mexico, all of my real estate in trust, however, for the purposes hereinafter mentioned.

"6. I hereby direct that my said executors shall have full power to manage said real estate as they may think for the best interest of the beneficiaries of my estate, that is, they shall hold the said real estate, collect the rents therefrom, pay the taxes thereon and do all other acts in connection with the management of said real estate, the same as I myself could do, to sell or convey any of said real estate at such time, and for such price as they may think is for the best interests of the beneficiaries of this trust.

"7. I further direct that any time my said executors shall receive any money as rents from the said estate, that they shall, as soon as reasonably possible, distribute the said moneys as follows:

"One-half (½) to William John Zirhut, one-eighth (⅛) to William G. Nehr, one-eighth (⅛) to Carry G. Nehr Bearup, one-eighth (⅛) to Lola Anna Nehr McKee, and one-eighth (⅛) to George M. Nehr."

On November 30, 1917, the said William J. Zirhut borrowed from the defendant the First National Bank of Albuquerque $4,400, and gave his promissory note therefor, and at the same time assigned to the bank all of his interest in the estate of said Annie Zirhut, deceased, as security for the payment of the note. The note not being paid at maturity, the bank brought suit

in Bernalillo county against the said William J. Zirhut, personally and against him and the said First Savings Bank & Trust Company as executors and trustees under said will, resulting in a judgment on June 26, 1918, against the said William J. Zirhut personally and against both of said executors and trustees, establishing an equitable lien on said Zirhut's interest in said estate and the proceeds thereof, by reason of said assignment to the bank. The judgment further provided that, unless said Zirhut paid the judgment, his distributive share of the proceeds realized from the sale of the real estate under the will be paid over to the bank to be applied on the judgment, and, unless the judgment be satisfied in 60 days, the right, title, and interest of the said Zirhut in the proceeds to be realized from sales of the real estate might be sold to satisfy said judgment. On February 8, 1919, the First Savings Bank & Trust Company, out of the proceeds of sales of the real estate, acting as surviving executor and trustee, the said William J. Zirhut having died, paid off said judgment in full.

In the meantime, said William J. Zirhut being indebted to plaintiff, it brought action against him, and on May 1, 1918, recovered a personal judgment against him in said district court. On the same day execution was sued out and placed in the hands of the sheriff for service, and was served June 14, 1918. On June 1, 1918, plaintiff filed a transcript of said judgment in the office of the county clerk of Bernalillo county. After the death of said William J. Zirhut, the exact date does not appear, the First Savings Bank & Trust Company, as surviving executor and trustee, sold and conveyed the real estate involved to the defendant Alfred Thelin, who in turn mortgaged the same to another of the defendants.

Plaintiff brought a suit in equity upon the theory that it had acquired a lien upon the interest of William J. Zirhut in the real estate, by reason of its judgment, levy of execution, and filing of the transcript of its

judgment, and in its amended and supplemental complaint filed January 5, 1920, set up most of the facts hereinbefore recited, and brought in new parties, made necessary by the death of some of the original parties, and sought by its action to establish its lien upon an undivided one-half interest in said real estate as the property of said William J. Zirhut, and seeking to remove the said deed to Thelin and the said mortgage by him to the other defendants as clouds upon the title, so that it might enforce its said judgment by execution.

The defendant the First National Bank of Albuquerque demurred to the complaint on the ground that it failed to state a cause of action upon the theory that William J. Zirhut never acquired under the terms of the will anything more than an equitable interest in the proceeds of the sale of the real estate, which was not subject to sale as real estate under execution. The defendant First Savings Bank & Trust Company answered fully, setting out that it had sold the real estate and paid out of the proceeds the claim of the First National Bank as it was directed by the judgment heretofore mentioned, and setting up many of the other facts heretofore recited. Defendant Mary E. Sturges answered, setting up her mortgage from Thelin. Defendant Thelin answered, setting up his title to the property free from any judgment or execution lien of plaintiff.

The court sustained the demurrer of the First National Bank to the complaint, and overruled the demurrers which plaintiff had interposed to the answers of the defendants above mentioned, and found that the complaint failed to state a cause of action, and, plaintiff electing to stand on its complaint, and declining to plead further, the court dismissed the complaint, which judgment is here for review.

It is apparent that the parties have proceeded upon two opposing theories of the law as applicable to the facts, about which there is no dispute. The plaintiff has proceeded upon the theory that its debtor, Zirhut,

under the terms of the will, became the owner and holder of the legal title to an undivided one-half interest in the real estate, which became and was subject to the judgment lien, and subject to sale under the execution. In order to arrive at this result, plaintiff must and does rely upon the doctrine of merger, and it is claimed by it that, upon the death of the testatrix, Zirhut took under the will equitable title in the land as devisee, and the legal title as executor and trustee, and that the former became absorbed and merged into the latter. Defendants, on the other hand, have proceeded upon the theory that, under the will, Zirhut took no interest, personally, either legal or equitable, in real estate as such; that he took an undivided one-half interest in the proceeds of rents and sales of the real estate, holding the legal title as joint executor and trustee; and that, consequently, there was never anything to which plaintiff's judgment lien could attach.

The whole case thus turns upon the proper interpretation of the will and the application of the proper legal doctrines thereto.

It is to be noted that Zirhut took the legal title as joint executor and trustee, and no devise is made in terms to him of any beneficial interest in the real estate as such. There is no provision for the distribution of the real estate in specie among the beneficiaries of the trust; only for distribution of the proceeds of rents and sales thereof. The executors are granted title and are empowered to' sell the real estate and convert the same into money for distribution, but they are not in terms commanded to do so. They are, however, directed as soon as they accumulate moneys from rents or sales to distribute the same to the beneficiaries. They are not clothed with the power to hold the title in trust for the use and benefit of the beneficiaries, but their sole power is to manage and care for the property and to sell the same and to distribute the proceeds.

A careful reading of the provisions of the will leads us to conclude that it was the intention of the testatrix

to convert the real estate into money.  Otherwise there is no provision for the distribution of the estate to the beneficiaries.  In no event could they demand a conveyance from the executors of proportionate shares in the real estate, because they are granted no such right by the will.  What they acquired was a right to have the executors, within a reasonable time after the death of the testatrix, sell the property and distribute the proceeds to them, as directed by the will.  This would be the only relief which a court of equity could grant them.  The property involved consists of five city lots in the city of Albuquerque, divided into two parcels in different blocks of the city.  Just what the condition was as to improvements does not appear, although that there were improvements is fairly inferable from some of the exhibits attached to some of the pleadings.  Zirhut was the son and the other beneficiaries were the grandchildren of the testatrix, and the nieces and nephews of Zirhut.  The exact character of the property as to productiveness is not disclosed, but it is to be inferred from what is disclosed that it would, if retained as real estate, be unsuitable to the desires and needs of the beneficiaries, they being residents of different parts of the country, and of disparent ages.  Nor was the property apparently susceptible of partition in specie, so as to give each a portion in severalty with any degree of practicability.  Partition by sale and division of the proceeds would have been necessary had the testatrix elected to devise the land directly to the beneficiaries.  The title was intercepted by the will, and, instead of going directly to the beneficiaries, with the power of sale by the executors and trustees, it was passed directly to the executors, with directions as to the disposition of the proceeds only.  The trust is not a naked or dry trust, but is an active trust, with active duties resting upon the trustees until the property is disposed of and the proceeds distributed to the beneficiaries in unequal amounts as between Zirhut and the grandchildren.  There seems to be no plan or scheme arising out of the provisions of the will, except

the plan or scheme to convert the property into money.

[1] 1. It is well settled that the owner of property may, by way of will, and in many other ways, change the nature or character of his property, so that thenceforth it partakes of the character which the owner desires. . 1 Pomeroy's Eq. Jur. (4th Ed.) §§ 161 and 371; 3 Pomeroy's Eq. Jur. (4th Ed.) § 1159; 2 Story's Eq. Jur. (4th Ed.) § 1091; 13 C. J. "Conv." § 3; 6 R. C. L. "Conv." § 3; Lambert v. Morgan, 110 Md. 1, 72 Atl. 407, 132 Am. St. Rep. 412, 17 Ann. Cas. 439.

The intention of the testator is immediately upon his death effectuated by the application of the equitable doctrine or maxim that "Equity regards as done that which ought to be done." This proposition is universally accepted, and there is in this case, no controversy about it.

[2] 2. In determining whether real estate has by the terms of the will been converted into personal property, the intention of the testator is of paramount and controlling importance. This intent, when correctly and certainly ascertained, governs in all cases. It is manifested, of course, by the terms of the will, properly interpreted. The more simple form of a testamentary conversion of real estate into personalty is where the lands are devised to executors and trustees, with specific and mandatory directions to convert the same into money, and to distribute the same to the beneficiaries. Here there is no room for interpretation, for the intention of the testator is clearly and unequivocally expressed, and the conversion takes place immediately upon his death. There is not and could not be any controversy in this case about this proposition.

[3] 3. The intention of the testator to convert the property may be implied, even in the absence of express mandatory words in the will. This implied intention, when properly ascertained, becomes as mandatory upon the executors and trustees, and as effectual to work conversion as if so expressed in the will. 2 Story's

Eq. Jur. (4th Ed.) § 1102; 3 Pomeroy's Ed. Jur. (4th Ed.) § 1160; 13 C. J. "Conv." § 28; 6 R. C. L. "Conv." § 4; Griffith v. Witten, 252 Mo. 627, 161 S. W. 708; Keen v. Plume, 82 N. J. Eq. 526, 90 Atl. 1027; Brown v. Miner, 261 Ill. 543, 104 N. E. 150; Williams v. Williams, 152 App. Div. 323, 136 N. Y. Supp. 990; Becker v. Chester, 115 Wis. 90, 91 N. W. 87, 650; Brown v. Fidelity Trust Co., 82 N. J. Eq. 323, 87 Atl. 222; Ford v. Ford, 70 Wis. 19, 33 N. W. 188, 5 Am. St. Rep. 117, and note; Craig v. Leslie, 3 Wheat, 563, 4 L. Ed. 460; Greenman v. McVey, 126 Minn. 21, 147 N. W. 812, Ann. Cas. 1915D, 430, and note.

In Becker v. Chester, 115 Wis, 90, 91 N. W. 87, 650, there is a fine discussion of this matter. The will in that case did not contain an express command to convert real estate into money; but the sixth clause of the will contained a power of conversion, and provided for the residuary portion of the estate to be administered by the executors, and for its division into four parts for the benefit of four beneficiaries, with diverse and sundry forms of disposition of said four parts, depending upon contingencies named in the will. The question was whether there was equitable conversion under the terms of the will, there being no positive command to so convert the property. The court, after reviewing the Wisconsin cases and many others said:

"From the foregoing we deduce this: When the execution of the scheme of the testator would be impossible, or attended with such difficulties that it would be unreasonable to suppose that its execution was contemplated by him, without the conversion of his real estate into personal property, a direction for such conversion will be deemed imperatively expressed in the will, by necessary implication, to the same effect as if expressed in words; and the realty so directed to be converted will be deemed impressed with the character of personal property from the time of the death of the testator."

The court refers to Dodge v. Williams, 46 Wis. 70, 1 N. W. 92, 50 N. W. 1103, in support of its holding, in which case there was power to convey real estate; but the plan of the testator was to devise $5,000 to four

institutions of learning in Wisconsin. The court, in holding that there was equitable conversion, said:

"When a will contains a power of sale, not mandatory in terms, but it is apparent, from the general scope and tenor of the will, that the testator intended all his realty to be sold, the power of sale will be held imperative, and the doctrine of equitable conversion applied. Courts of equity will deal with the estate as personal from the death of the testator."

In King v. King, 13 R. I. 501, the question was whether there was implied equitable conversion. In that case there was no necessity for equitable conversion, there being sufficient personal property to pay specified legacies. There was no express direction given to convert the property. The trustees were empowered to sell and convey and change investments, not arbitrarily or absolutely, but as they might deem to be for the best interest of the said trust, or to the advantage of the said trust, or when the sale of any of said estate might be necessarily for the payment of any legacy provided in the will. The court said:

"This is not such language as would have naturally been used if an out and out conversion had been intended. We think, however, that the specific legacies were intended to be paid in money, and that therefore, for lack of personal estate to pay them, there would have been necessarily implied a direction, operating pro tanto as a conversion, to sell enough of the real estate to pay them, unless as provided in the seventh clause, a significant provision which in itself is inconsistent with conversion at all events, the legatees or some of them should agree to take real estate in payment as a valuation in lieu of money. But there was no such lack of personal property, and the only question therefore is whether a direction to convert must be implied for a division of the residue. In giving this residue the language of the testator is, 'I give, devise, and bequeath,' as if it was in his mind that the residue would or might consist of real as well as of personal property. Nor is there any language which necessarily implies that it was to be divided as money or personalty."

This case well illustrates the dividing line between cases where conversion is necessary in order to carry out the intention of the testator, and where it is not necessary. In the former conversion takes place, and in the latter it does not.

In Brown v. Fidelity Trust Co., 82 N. J. Eq. 323, 87 Atl. 222, the testator's estate consisted of a farm and a trifling amount of personal property. The will gave the whole estate to the widow for life, with the remainder in equal shares to his children living at his death, and provided that the share of one daughter should be at least $2,000, and that another daughter's should be invested and the interest paid her for life, and that the share of a son should be invested and interest paid to him, with the remainder over to his children. It empowered, but did not command, the executor to sell the land during the widow's life with her consent, and after her death to sell all unsold real estate. A codicil changed the beneficiaries somewhat, but not the general tenor and plan of the will. The court said:

"If the direction of the will as to the proceeds requires a sale it is equivalent to a positive direction to sell, and the land is deemed personal property from the death of the testator. Cook, Executor, v. Cook, Administrator, 20 N. J. Eq. 375. A conversion is a question of intention, and the real question is, Did the testator intend his lands should be converted into money at all events before distribution? Wurts' Executors v. Page, 19 N. J. Eq. 365."

In Keen v. Plume, 82 N. J. Eq. 526, 90 Atl. 1027, the will provided that upon a grandson attaining the age of 21 years the trustee should pay to him out of a certain portion of the estate the sum of $4,000, with certain provisions in case of the death of the grandson before arriving at the age of majority. The court said that this provision worked an equitable conversion of the property, but that it was not necessary to so hold in that case, because the power to sell in the will had been exercised by the trustees without objection on the part of the beneficiaries. The court draws the distinction between the power of sale and a trust for sale, and said:

"The cogent fact is that a conversion has actually been made and the property actually transmuted from realty to personalty without objection; the change took place with regard to each separate parcel of land at the time when the power to sell was exercised and the actual transmutation of the prop-

erty took place. This rule is found in our own state in Wurts v. Page, 19 N. J. Eq. 365; in Cook v. Cook, 20 N. J. Eq. 375; Kouvalinka v. Geibel, 40 N. J. Eq. 443; and McKiernan v. McKiernan, 74 Atl. 289. The English rule is the same. I quote from Mr. Justice Farwell's work on Powers (at page 548): 'A power of sale as distinguished from a trust for sale does not operate as a conversion of property. The direction to sell must be imperative in order to operate as a conversion (Fletcher v. Ashburner, 1 Bro. Ch. C. 497), but if it be exercised, the property will be converted according to law unless there be a trust declared of the proceeds sufficient to reconvert it. Walter v. Maunde, 19 Ves. 424; De Beauvoir v. De Beauvoir, 3 H. L. C. 525; Greenway v. Greenway, 29 L. J. Ch. 601; 2 De G. F. & J. 128; Sugd. Pow. 856.'"

In Griffith v. Witten, 252 Mo. 627, 161 S. W. 708, the will contained no express power to the executor to sell the land. By reason of the provisions of the will requiring the payment to each of the beneficiaries of a specified legacy, the power to convey was implied. Upon the general subject the court said:

"In other words, if it is clear that the testator intended that all his estate be converted into cash and then distributed under the will, then in equity the real estate will be considered as cash for the purpose of the will, and reconverted into land at the option or election of the beneficiaries."

The court cites many cases in support of the general proposition that, although a will contains no express power or direction to sell, but establishes the intent that the estate be converted, it would be so considered in equity.

In Brown v. Miner, 261 Ill. 543, 104 N. E. 150, the provision of the will was that no real estate should be sold until a son should arrive at the age of 21, and, further, that, when said real estate was sold, a son was to be paid $200 per year for labor performed and to be performed for the testator, and $100 per year to a daughter for like services. It further provided that, when said real estate should be sold, and the previous provision of the will had been performed, there should be an equal division of "'all the lands, rents or proceeds resulting from the sale of said land'" between his three children. The testator appointed one of his sons as

executor, and there was no express power to sell and no command to sell. The court held that there was implied power and duty on the part of the executor to sell the real estate, it being in accordance with the general plan of the will. The court disregarded the word "lands" in the above quotation as being inconsistent with the general language of the will. This is clearly an extreme case on this subject, and exemplifies the controlling effect of a testator's intention as evidenced by the general plan of a will.

In Bolles v. State Trust Co., 27 N. J. Eq. 308, the testator's will gave to his son and his son's wife a one-half part of his estate during their joint lives. Executors were named in the will, of whom the son was one, and the executors were given the power to sell the estate in their discretion. On the termination of the life estate to the son and wife, the body of the gift is to go to the testator's grandchildren in such shares and proportions as the son should by will direct. Judgments had been obtained against the son and his son, and their interests in the testator's real estate were seized under execution and advertised for sale. They both sought to have the sale enjoined. The court held, of course, that there was no equitable conversion, but that the life estate of the son was subject to execution and sale. It is clear that this was correct. The right of the son to a life estate was complete, and was a legal estate subject to sale under execution. There being no equitable conversion by the terms of the will, the grandson took a vested remainder in the real estate itself.

[4] 4. Counsel for plaintiff, as we understand him, does not controvert the soundness of the foregoing propositions, but he argues against their applicability to the terms of the will in question. He says that the executors and trustees, under the will, might, in their discretion, hold the real estate indefinitely, collecting the rents and profits, and distributing them to the beneficiaries as directed. In other words, he argues the

duty to convert the real estate into money is not expressly or impliedly mandatory. Therefore, he says, there was no out-and-out conversion by force of the terms of the will, and conversion took place only when sale of the real estate was actually made by the surviving executor and trustee, which was subsequent to plaintiff's judgment lien.

It is to be noted in this connection that the doctrine of equitable conversion is a rule of necessity, not of convenience. It is a rule of necessity in the sense that, when a person has exercised a power over his property, as he has a right to do, by will or deed, the change in the character of the property which he has directed becomes binding upon all persons thereafter concerned with the same. His direction is, as before seen, at once effectuated by the equitable doctrine of conversion, although the change has not in fact taken place. But unless such necessity exists, the property is, and should be. allowed to retain its original character. 2 Underhill on Wills, § 696. But it is always to be remembered in this connection that a testator may make it necessary to convert the property by reason of the requirements which he makes as to the form in which the same is to be distributed, as well as by a direct command to convert it.

Counsel for plaintiff in this connection cites and relies upon Haward v. Peavey, 128 Ill. 430, 21 N.E. 503, 15 Am. St. Rep. 120. In that case a creditor obtained judgment and sold under execution the interest of one of the sons in the real estate devised by his father's will. The son resisted the title of the execution creditor upon two grounds, viz: (1) That the will of his father worked an equitable conversion of the land; (2) if there was no conversion, the interest of the son under the will was a contingent remainder, and as such was not subject to levy and sale under execution. He prevailed upon the second proposition and failed on the first. The will in question contained the following provision:

"On the death of my wife, or in the event of her marrying again, my executors shall then proceed to divide the property among my children. To my son William I give two hundred dollars, as his share, as I think he is better provided for than any of the others, and the land I wish to be kept in the family, and the executors may sell it to any of the boys at its full value, and the proceeds of all my property, both real and personal, to be divided among my several children, William as above mentioned two hundred dollars, and the residue equally divided between such of my children, George, Robert, James and Thomas, as may be then alive, or the lawful issue of such of them as may be dead leaving lawful issue."

The court said in construing this provision of the will:

"It seems clear that the power of sale was given as an alternative and not as the exclusive mode of making division of the property. The testator's wish that the land should be kept in the family seems to have furnished a governing principle in drafting the will, and that wish would be equally well accomplished by dividing the land itself among his sons, or by selling it to one of them and dividing the proceeds. * * * It would have been repugnant to the very purpose for which a sale was permitted to allow the land to be sold to a stranger, as that would manifestly have taken it out of the family. If no one of the sons therefore had been willing to purchase and pay its full value, the power of sale could not have been executed. In that case the only division possible would have been a division of the land."

The will contained another provision that:

"If any of my sons have any money advanced for them to begin with, the others must be made equal to them at the division of the property."

In regard to this provision the court said:

"We are unable to see how an adjustment of such advances was not quite as practicable under one mode of division as under the other. Even if there was not sufficient personal estate for the purpose of such adjustment, and it is not shown that there was not, the necessity of making it would interpose no obstacle to the division of the land without a sale."

The court held under these circumstances that there was no equitable conversion. This was, of course, a correct holding. There was no command to sell the land, and there was no necessity to sell it in order to make distribution as directed by the will, and, on the other hand, there was the express desire that the land should be kept in the family.

Counsel also cites and relies upon Swisher v. Swisher, 157 Iowa, 55, 137 N. W. 1076. In that case one Benjamin Swisher conveyed a considerable quantity of land to his two sons, Lovell and A. E. Swisher, in trust upon the following conditions: (1) That the trustees execute to the grantor a promissory note for $8,000, bearing interest, and to become due in five years; (2) that they also execute to the grantor a mortgage on the land to secure the payment of the note; and (3) that the trustees should not be personally liable for the payment of said note. The trustees were authorized to take charge of the property and to lease, work, farm, or in any way manage or control the same as they deemed best. They were authorized to sell and convey the land, and the deed provided for the survivor to execute the power of sale in case of the death of one, and, in case of the death of both, the power to sell and convey was passed to the legal heirs of the grantor. It provided that, in case of sale of the real estate, the said note for $8,000 should be first paid out of the proceeds. It further provided that all proceeds of sales or income of said land should be first applied to the payment of the note of $8,000, and that the remainder of said proceeds should be distributed by the trustees to certain named persons, including the two sons who were the trustees. There was no provision in the deed for the distribution among the children of the grantor of portions of the land itself, except that the legal heirs of the grantor might in case of the death of both of the trustees succeed to the powers of sale, who, the court assumes in its opinion, are the same persons designated in the deed as distributees of the funds resulting from the sale of the property in case it was sold. The court, after recognizing in general terms the doctrine of equitable conversion says:

"Turning again to the deed, we find that it clearly conveys the title to the trustees named; it grants to them auhority to use, lease, and control the land, to cut timber thereon, and to make necessary improvements; it authorizes them to sell and convey the land, and, upon the death of both trustees without having exercised that power, it should pass to the

legal heirs of the testator who were in such contingency given like power and charged with like trusts. If a sale was made, the proceeds were to be divided in equal shares between the living children of the grantor and the representatives of those who might then be dead. It will be observed that no date or time is fixed when this trust or power is to terminate. It is not made to depend upon a happening of any event determinate or indeterminate. It does not cease upon the death of the trustees, but passes from hem o he heirs of the grantor. No direction or obligation is laid upon the trustees to sell the land, and, so far as expressed in the language of the grant, they could continue to hold the property indefinitely. The sale, if any be made, and the time and terrms thereof are left solely to their discretion. The sole beneficiaries of the trust are named in the deed (being, as we understand it, all the grantor's heirs expectant then living), and among these beneficiaries are the trustees themselves."

The court thereupon held that there was no equitable conversion of the property so far as the grantees in the deed were concerned. The court expressed doubt as to the validity of the trust, and states that, if valid, it was probably a naked trust by virtue of which the trustees took no more than the legal title to the property, of which the children or heirs of the grantor were the beneficial owners. The court was considering in that case the nature of the estate which A. E. Swisher, one of the sons and trustees, took under the deed, and held that he took a complete legal estate under the doctrine of merger.

It is to be seen from the facts in that case that it is vastly different from the case under consideration. There the trust might continue indefinitely, and the beneficiaries as heirs of the grantor might ultimately come into the estate by inheritance, and might succeed to all the powers of sale originally granted in the deed. In the case at bar, however, there is no provision for the beneficiaries of the trust ever coming into the title of the land as heirs, they being given only the proceeds of the sale and income of the property.

In this connection reference may be made to 3 Pomeroy's Eq. Jur. (4th Ed.) § 1160, p. 2749, and notes, where a long list of cases is collected.

In the case In re Cooper's Estate, 206 Pa. 628, 56 Atl.

67, 98 Am. St. Rep. 799, it was held that there was no equitable conversion of the land under the will until it was actually converted, because the will provided that the land should be leased if it could be leased to advantage, and that it should be sold only in case it could not be so leased, and that therefore there was no absolute direction or necessity to sell the land, and that therefore, there was no out-and-out conversion.

[5] 5. There is another proposition which militates against the claims of the plaintiff, and it is to the effect that under a will like the one in the case under consideration the entire title is transmitted to the executors and trustees. Thus in Marvin v. Moore, 49 Wash. 288, 94 Pac. 1087, the testator devised by his will one-half of the proceeds of lots when sold, and which remained after the testator's death, to each of his two children, the will designating the brother of the testator as executor without bond. Thereafter the executor undertook to sell and convey to the plaintiff in that case the interest of the deceased in the lots, and he executed and delivered a deed and received the purchase price. The purchaser brought a suit to quiet title, and the guardian ad litem of the minor son demurred to the complaint upon the ground that the executor had no power under the will to sell the land, and that the legal title had vested in the two children and the widow under a statutory provision of that state. The court said:

"The terms of the trust could not be carried out without the power to sell the land and to transfer the title thereto. The title therefore vested in the trustee for that purpose. It is the established doctrine that 'trustees take exactly that quantity of interest which the purposes of the trust require.' 2 Jarman, Wills (6th Ed.) p. 306. No particular form of words is necessary in order to create a trust of this character, but the purpose to create it may be gathered from the language of the instrument by giving to the words employed the customary significance accorded to them when used in similar connections. If by the application of such test it is found that a trust has been created, then the immediate disposition of the title is well stated as follows: 'If the purposes of the trust require that the trustee shall take the fee simple of the legal interest in order that those purposes may be carried out, he

will take an estate of inheritance, though no words of inheritance have been used by the testator in devising the legal interest. Hence, if the interest given to the beneficiary, though it was devised to him in indeterminate language, is greater than the legal interest devised to the trustee, the trust estate will be enlarged in the trustee to answer all the purposes of the trust. If the carrying out of the purposes of the trust require that the trustee shall take a fee, equity will create a fee simple in him by implication without the use of the word "heirs." ' 2 Underhill, Law of Wills, § 781."

The court further sustains the general doctrine that the necessity of the conversion of realty into personalty to accomplish the purposes expressed in a will is equivalent to an imperative direction to convert, and effects an equitable conversion, citing many cases.

In Manhattan State Bank v. Haid, 97 Kan. 297, 155 Pac. 57, the will of the testatrix provided that the real and personal property belonging to her at the time of her death should be sold and converted into money. Various provisions were made in the will for distribution of the proceeds, and they made out an active and not a naked trust in the executor. The court said:

"There is abundant authority that an equitable conversion of the real estate took place to enable the executors to carry out the trust created by the will. Express words giving title to executors are not essential to equitable conversion when such is the necessary effect and intention of the will. It was impossible to carry out this will unless the entire estate passed as personalty. The persons who were to receive shares of the estate under the will were not those who would inherit if there were no will. There were five heirs, but one of them was deprived of her share of the estate by the will and was given merely an income for life. The will spoke from the date of the death of the testatrix, the conversion took place at that time, * * * and the real estate did not descend as such to Barbara Haid's heirs."

In Chick v. Ives, 2 Neb. (Unof.) 879, 90 N. W. 751, the will provided that one-third of all money and property should go to the wife of the testator, and that the remaining two-thirds should be divided equally among his children. It further provided that the portion going to the children be invested at interest until the children respectively reached the age of 24 years. The wife was appointed executrix of the will and

qualified.   One of the children and her husband executed a mortgage to the plaintiff in the case upon her one-seventh of two-thirds of her father's real estate, the real estate not having been actually sold by the executrix up to that time, and the question was whether the land still remained real estate, or whether under the terms of the will it was converted into personal property.   The will did not in express terms authorize the executrix, or any one else, to sell any portion of the real estate.   The power to sell under the will, however, was implied, as the court held.   The court, after discussing the general principles of equitable conversion, said:

"It follows that the heirs have no interest in the real estate, as such; that it cannot be seized on attachment by their creditors, nor is a judgment against them a lien thereon."

In Walker v. Killian, 62 S. C. 482, 40 S. E. 887, the provision of the will was that—

"When my son, Milton Killian, shall reach the age of 21 years, I empower and direct my executrix * * * to sell upon such terms as to her shall seem best my tract of land," etc.

The court said upon this point:

"Certainly, if a testator orders certain of his lands to be sold and the proceeds of the sale divided, the fee to said lands does not vest by operation of law in the persons to whom the proceeds of sale when made is given.   It becomes a personal estate or a legacy in such persons."

See, also, Lantz v. Caraway, 180 Ind. 484, 103 N. E. 335, 50 L. R. A. (N. S.) 32, where a distinction is pointed out in case of a will passing the title to executors and one which directs simply that real estate be sold and the proceeds be distributed, but without passing the legal title to the executor.   In the one case it is held in Indiana that the executor is the custodian of the title until divested by sale, while in the other the title is held to be in the beneficiaries or the heirs until the sale is made.   This distinction is not recognized generally by the courts.   See, also, 13 C. J. "Conversion," § 66, p. 882.

In Beeler v. Barringer, 252 Ill. 288, 96 N. E. 874, the will directed that the testator's property should be reduced to money, and after payment of legacies should be divided into four equal parts, and one part paid to each of his four children as they arrived at the age of 21 years, respectively. The court said:

"There is no controversy upon the proposition that under the will the defendants in error took no title to the land: that where land is devised and by the terms of the will is directed to be converted into money and the money distributed to the devisees and legatees, it is a devise of money and not of land."

See, also, Greenman v. McVey, 126 Minn. 21, 147 N. W. 812, Ann. Cas. 1915D, 430, and note; Lambert v. Morgan, 110 Md. 1, 72 Atl. 407, 132 Am. St. Rep. 412, 17 Ann. Cas. 439; Beaver v. Ross, 140 Iowa, 154, 118 N. W. 287, 20 L. R. A. (N. S.) 65, and note, 17 Ann. Cas. 640, and note; Morrow v. Brenzier, 2 Rawle (Pa.) 185; Allison v. Wilson's Executors, 13 Serg. & R. (Pa.) 330; Robison v. Dodkin, 181 Ill, 182, 54 N. E. 915; Darst v. Swearingen, 224 Ill. 229, 79 N. E. 635, 115 Am. St. Rep. 152; Jones v. Caldwell, 97 Pa. 42.

In Roland v. Miller, 100 Pa. 47, it is said:

"The testatrix directs that all her 'personal estate shall be divided equally among her children and heirs at law.' In a subsequent item she makes the same disposition of the proceeds from any sale or sales, rent or rents, of her real estate. The real estate, as realty, is not devised; but the executors are authorized to lease the whole or any part for a term of 15 years, and shall not be compelled by her heirs to sell any real estate, so leased, until the expiration of the term. Sales of real estate are prohibited for ten years after the decease of the testatrix, unless the executors deem it advantageous or advisable to sell the whole or any part, in which case they are authorized and empowered so to do, within said 10 or 15 years.

"It never is presmued that a testator intended to die intestate as to any part of his estate, if the contrary intent can be fairly deduced from the language of his will. * * * Here, unless the testatrix died intestate as to the realty, it must be sold to the end that the proceeds be divided among the legatees. The whole frame of the will shows intendment to dispose of the entire estate, the conversion of the realty, and a positive direction to sell after a defined period. Conversion is imperatively required to give the will any effect as to the real estate."

See, also, Stake v. Mobley, 102 Md. 408, 62 Atl, 963; Van Zandt v. Garretson, 21 R. I. 352, 43 Atl. 633; In re Adams, 32 R. I. 41, 78 Atl. 524.

The general subject is treated in Perry on Trusts and Trustees as follows:

"Therefore, the extent of the legal interest of a trustee in an estate given to him in trust is measured, not by words of inheritance or otherwise, but by the object and extent of the trust upon which the estate is given.   On this principle, two rules of construction have been adopted by the courts:   First, 'Wherever a trust is created, a legal estate, sufficient for the purposes of the trust, shall, if possible, be implied in the trustee, whatever may be the limitation in the instrument, whether to him or his heirs or not.' And, second, 'Although a legal estate may be limited to a trustee to the fullest extent as to him and his heirs, yet it shall not be carried further than the complete execution of the trust necessarily implies.' "   1 Perry on Trusts and Trustees (6th Ed.) § 312.

"So, if land is devised to trustees without the word 'heirs,' and a trust is declared which cannot be fully executed but by the trustee taking an inheritance, the court will enlarge or extend their estate into a fee simple, to enable them to carry out the intention of the donor.   Thus, if land is conveyed to trustees, without the word 'heirs,' in trust to sell, they must have the fee, otherwise they could not sell.   The construction would be the same if the trust was to sell the whole or a part; for no purchaser would be safe unless they could have the fee; and a trust to convey or to lease at discretion would be subject to the same rule.   A fortiori, if the estate is limited to trustees and their heirs in trust to sell or mortgage or to lease at their discretion, or if they are to convey the property in fee or divide it equally among certain persons; for to do any or all of these acts requires a legal fee."   Id. § 315.

It is to be noted in connection with this paragraph of the opinion that the executors and trustees under this will were devised the title to the real estate and were charged with the duty of collecting the rents and profits therefrom, and selling the said land and distributing the proceeds from both sources to the same beneficiaries.   They could not sell the land, that is, convey title to the same as trustees, unless they were seized of the title in fee.   Had this land been devised to the same persons named as beneficiaries under this will, and the same executors had been clothed with the same power to sell and convey these lands, they would then sell and convey the same under the power conferred

by the will and not as trustees strictly speaking, but rather as executors. But holding the fee as trustees, the validity of their conveyance will be sustained upon the fee vested in them, and not by the power contained in the will. Perry on Trusts and Trustees, § 316.

So in this case, it being necessary, the executors took the title in fee as trustees, and there was no title, legal or equitable, in the beneficiaries in and to the land, they taking only a distributive share in the proceeds of rents and sales.

Upon this same subject Mr. Pomeroy, after pointing out the distinctions between passive and active trusts, says in regard to the latter:

"In this class the interest of the trustee is not a mere naked legal title, and that of the cestui que trust is not the real ownership of the subject-matter. The extent and incidents of the rights held by the respective parties must, of course. vary with the nature of the trust itself and the duties which the trustee is called upon to perform. It is a universal rule, however, that the trustee's estate and power over the subject-matter are commensurate with the duties which the trust devolves upon him, and are sufficient to enable him to perform all these duties. The trustee is generally entitled to the possession and management of the property, and to the receipt of its rents and profits; and in many cases he has, from the very nature of the trust, authority to sell or otherwise dispose of it. The interest of the beneficiary is necessarily more limited than in passive trusts, and it sometimes cannot with accuracy be called an equitable estate. He always has the right, however, to compel a performance of the trust according to its terms and intent." 2 Pomeroy's Eq. Jur. (4th Ed.) § 991.

Mr. Pomeroy classes active trusts into four general classes, among which are:

"2. Where the primary object is to sell or dispose of the entire trust property in some manner and to use the proceeds for ulterior purposes. In all instances of this class, where the trust is to sell the corpus of the property and to distribute the proceeds among creditors, legatees, and the like, the beneficiaries plainly acquire no proper estate in the original trust fund prior to its sale; their right and interest attach to the proceeds of this fund; which are to be paid to or distributed among them. In order to make their right fully available, and to guard their interest as much as possible against the large authority given to the trustees, equity has invented in

such cases the doctrine of conversion, by which real property is regarded as personal, and personal property as real." Id. § 992.

He further says:

"Although the beneficiary in all these classes of express trusts takes no estate, this does not prevent him from taking or holding the estate, or being vested with the ultimate estate, after the trust is ended. He also has the right—a thing in action; and how far this is assignable or may be reached by his creditors depends upon the nature and particular provisions of the trust. The entire estate is vested in the trustee, but his power to make a valid sale and conveyance will depend upon the nature of the trust and the form of the instrument by which it is declared." Id. § 1005.

The doctrine of conversion is generally spoken of as a doctrine designed to effectuate the intention of the testator or other person concerned in the disposition of the property. The beneficiaries of a trust, of course, reap the benefits, or suffer the consequences, of the conversion, and their rights and remedies arise accordingly. See, also, in this connection, 1 Tiffany, Real Prop. (2d Ed.), § 103, where it is pointed out that, while there is a difference of opinion, the better doctrine is that a beneficiary, under a trust of this kind, takes no estate in the land. See, also, Kale, Est. and Future Interests (2d Ed.) § 189.

[6] 6. As before pointed out, plaintiff relies upon the doctrine of merger, and much stress is laid upon it in the briefs. There are, however, some insurmountable obstacles to its application. In the first place, before a merger can take place there must be an equitable "estate" in the land to become merged in the legal estate. As we have heretofore pointed out, the beneficiaries under this will took no estate in the land, but took a gift of money with a right to have the land subjected to the payment thereof. We might end the discussion at this point, but, in view of the vigorous argument of counsel for plaintiff, we will discuss some of the cases cited and relied upon.

In Bolles v. State Trust Co. 27 N. J. Eq. 308, as we have heretofore pointed out, there was an express de-

vise to the son and his wife of a life estate, and he took
the complete legal title, which was the subject to execu-
tion and sale. The grandson also took a vested remain-
der in such portion of the property as might be directed
by his father's will. Both took by the very terms of the
will complete legal estate, and there was no question
of merger involved.

In Wills v. Cooper, 25 N. J. Law 137, one Joseph
Van Meter conveyed to Benjamin B. Cooper and wife
the land in question, in trust that they should receive
the rents, issues, and profits thereof during the minor-
:ty of their children, Ralph and Sarah, and such other
children as might be born to them, and apply said rents,
issues, and profits for the maintenance and support of
said children; and, after said children should arrive at
lawful age, then in trust to grant and convey the same
to all of such children as might then be living, and to
the lawful issue of any such child or children as might
then be deceased, in equal shares as tenants in common
in fee. One additional child was born named William,
who, of course, took his interest under the terms of the
deed. Benjamin B. Cooper survived his wife, and died,
leaving a will by which he devised to his said three chil-
dren all the residue, remainder, and reversion of his
estate to be equally divided between said children. At
the death of Benjamin B. Cooper only one of his chil-
dren was of age, namely, Ralph. Under the law of
primogeniture in New Jersey, upon the death of Ben-
jamin B. Cooper the legal estate to the land descended
to Ralph, the oldest son, and did not pass under the
will of his father. He thus took the legal estate to the
whole tract, and had under the Van Meter deed an
equitable estate in one-third of the land. The court
said:

"Now, as to the legal title, it having passed to Ralph by
descent, the trust, as to his one-third part was an executed
trust, and as to the two-thirds, 'he held the title as trustee for
his brother and sister. This seems to be the inevitable re-
sult, as he could not remain a trustee for himself. Then what
became of his equitable estate? It was a vested beneficial
interest, for he had the present enjoyment, as well as the
'egal title, to him and his heirs, under the Van Meter deed.

Ordinarily, when such an interest or estate meets and unites with the legal title in one person, the former merges in the latter. Preston on Merger, 6, 315, 441."

The court further says:

"Here the legal estate cast upon Ralph by descent was undoubtedly broad enough to cover his equitable interest; and it is, I think, sufficiently clear that, upon the fair construction of the Van Meter deed, his equitable beneficial interest and the absolute legal estate which he took by the descent clear of the trust were precisely coextensive and commensurate; each extended to one undivided third part of the premises, and each subject to the same conditions."·

It is to be seen that under the terms of. this deed the children of Benjamin B. Cooper and wife were granted a clear equitable estate and title to this land, which, so far as Ralph, the, oldest son, was concerned, and who took the legal title to the whole trace by descent, was merged into the legal title.

In Hopping v. Gray, 82 N. J. Eq. 502, 89 Atl. 27, the testator gave the income of one-third of his estate to his daughter for life, the income of another third to his son for life, and the remaining third absolutely to his other daughter upon her attaining the age of 24. The executors, also· named as trustees, were directed to lease or sell the property in the meantime as might be necessary and pay the income to the beneficiaries quarterly. It was held that the testator, not having devised the remainder of the estate, devised to the son for life, the legal title to such third did not pass to the executors or trustees, but descended to the testator's heirs at law, subject to be divested by the exercise of the power of the trustees. It was further held that this son under this will took the right to receive the income of one-third of the estate during his life, and also immediately he took the legal title to an undivided one-ninth of the estate, because of the testator's failure to dispose of the remainder after his life estate in the undivided third, and that the son's equitable life estate to the extent of one-third thereof merged in the remainder to the extent of one-ninth immediately on the testator's death, and hence such ninth was subject to the execution by the son's creditors. The court said:

"It is next urged that the judgment and execution of Mc-Murtry could not be a lien upon the right of Frederick to receive the income of one-third of the estate during his life because, that was an equitable interest to which a levy could not attach. This argument is met by the exceptants by urging that upon the death of the testator there was a merger of this equitable estate into the larger legal estate which had devolved upon him by reason of the intestacy above mentioned. That such a merger may take place appears from the authorities cited on the brief of the exceptants."

It is to be seen that in this case the heirs took by descent the legal title and took by the will an equitable estate for life, in which case there is good ground for the application of the doctrine of merger.

In Mason v. Mason's Executors, 2 Sandf. Ch. (N. Y.) 477, a much-cited case, the testator devised to one George Jones, the husband of testator's deceased daughter, and to her children by him, and to their respective heirs, executors, administrators, and assigns, an undivided eighth part of all his real and personal property, and provided that said children should take under the will only after the death of their said father, George Jones. One-half of the testator's property he devised to three executors and trustees, among whom was the said George Jones, in trust to receive the rents, issues, profits, interest, dividends, or other income therefrom, and out of such income to pay certain annuities. Provision is made for the contingency arising out of the death of some of the annuitants, and the said George Jones is under said conditions named in the will as one of the possible beneficiaries in the distribution of the proceeds of the rents and profits of this half of the property. He is also devised the further interests as follows:

"But should my said last-named two sons, or either of them, die without leaving any issue them or him surviving, then I give, devise and bequeath the said last-mentioned two equal fourth parts or one equal fourth part of the said remaining half part of my said property and estate, both real and personal as the case may be, subject to the said last-mentioned annuities to the said Mary Jones; Rebecca Jones; George Jones, if he be then living, or if then dead, to the children of my said daughter Serena."

A bill was filed by one of the sons of the testator attacking the will generally as violative of the law against restraints of alienation, but we do not find that the question of merger of a legal and an equitable estate in George Jones was directly involved.    Nevertheless the court said:

"In regard to George Jones, who in this instance is a beneficiary of the trust, the only consequence is that he takes a legal and not an equitable estate, in his proportion of the surplus to be distributed."

The announcement by the court was undoubtedly correct.   George Jones, as one of the trustees, took jointly with the other trustees the legal title to a half interest in the property in trust.   He also took, contingently, beneficially an interest in a certain portion of the property.   In such a case there was, of course, merger.

Counsel also rely in this connection upon Swisher v. Swisher, 157 Iowa, 55, 137 N. W. 1076, heretofore referred to in another connection, and in which there was merger.   But as before seen, in that case the trustees took by inheritance an equitable interest in the land, and the doctrine of merger might well apply. In all of the cases cited the persons concerned took a true equitable estate in the land, and of course when a creditor sought to reach the same, the doctrine of merger was applied.

A fine case on this subject is Asche v. Asche, 113 N. Y. 232, 21 N. E. 70.   In that case the will devised to executors and trustees all of the testator's real and personal property with directions to invest and keep invested the proceeds thereof in certain classes of securities, and to pay the interest or income of a part thereof to his mother during life, and to pay his widow during her life the interest or income upon all the rest, residue, and remainder of his estate, including that bequeathed to his mother, upon her death, and after the death of the wife to pay over the remainder to his surviving children.   The widow claimed the benefit of the provision made for her by the will, and also dower.   She contended that, upon the death of her daughter, one of

the said children, she became entitled to one-half of the remainder provided for such children, and to an absolute interest in possession of one-quarter of the estate, by reason of the alleged merger of her legal and equitable interest. The court held that there was equitable conversion of the real estate under the provisions of the will, and that the wife never acquired a right of seizin. The court said:

"There could, therefore, be no merger here because of the existence of a valid trust with the right in the trustees to the possession of the trust fund for the purposes of management and control during the life of its beneficiary."

The court further said that the necessity for the maintenance of the trust would remain in full force, notwithstanding the widow's succession to the rights of her children, and that by such acquisition she would acquire a future estate dependent upon the precedent estate of the trustees, but which she could not enjoy in possession.

In Burbach v. Burbach, 217 Ill. 547, 75 N. E. 519, the testator devised to her three sons all of her real and personal property in trust for the use and purpose that they should collect the personal estate and take possession of the real estate, and should, as soon as they demed it to the interest of the estate, sell and convey all the real estate in fee, and pending such sale that they should care for, manage, and superintend the same, and to pay the net income to themselves and to other children in equal shares. Upon a division of the estate the trustees were directed to pay themselves each one-fifth thereof, and the remaining two-fifths to hold in trust for the benefit of the two daughters during their lifetime, and upon their death to divide the same between their children. It was admitted by counsel that as to the portion distributable to the two daughters there was an active trust which was not executed by the statute of uses, but it was contended that, as to the three-fifths going to the trustees as beneficiaries, the trusts were executed by the statute for the reason that they could not be trustees for themselves. It was also

contended that, the legal and equitable title to said three-fifths being in the same persons, the two estates merged. The court held the will effectuated equitable conversion. The court said:

"The provisions of the will are not void on the ground that the three trustees are also beneficiaries. Whatever may be said as to the fitness of trustees to take property in trust for themselves, they are not necessarily and in all cases in capable of doing so (Perry on Trusts, § 59), and where one is a trustee for himself and others that fact does not defeat the trust (Summers v. Higley, 191 Ill. 193). The title held by the trustees is joint, and there is no merger of separate interests in the different trustees arising out of the fact that they are also beneficiaries. The trust is an active one, in which the trustees hold possession, manage and lease the property, and pay over the income, after deducting all expenses, to the beneficiaries. As soon as it appears to be for the best interest of the estate they are to sell the real estate and divide the proceeds."

This case is on all fours with the case at bar.

[**7**] 7. Some other considerations prevent the operation of the doctrine of merger. Merger is not favored either at law or in equity, and is largely a question of intention on the part of the person in whom the two estates unite. This intention is not fixed or unchangeable until some one, having the right to do so, calls the same in question.

Thus, in McCreary v. Coggeshall, 74 S. C. 42, 53 S. E. 978, 7 L. R. A. (N. S.) 433, 7 Ann. Cas. 693, it is said that merger is not favored in courts of law or equity; and in equity at least it will not take place if opposed to the intention of the parties, either actually proved or implied from the fact that merger proved or implied from the fact that merger would be against the interest of the parties in whom the several estates or interests have united. This is a well-considered case, and reviews many cases. Attached to the case is a comprehensive note as to when the intention of the parties may be expressed so as to be available to prevent merger.

In Goodwin v. Keney, 47 Conn. 486, suit was brought

to foreclose a mortgage which had been assigned by the mortgagee. The mortgagee had acquired the fee from the mortgagor some nine months before the assignment of the mortgage. One of the questions in the case was as to whether these circumstances worked a merger of the equitable interest created by the mortgage. The court held that it was not necessary for the holder of the two estates or interest in the land to declare his intention to keep them separate immediately upon the meeting of the two interests in him, and that there was no merger owing to the expressed intention of the owner evidenced by the assignment of the mortgage.

In James v. Morey, 2 Cow. (N. Y.) 246, 14 Am. Dec. 475, a most thoroughly considered case, the fee and the mortgage interest united in the mortgagee, who soon after verbally declared himself to be the absolute owner, and then after the lapse of several months, sold his interest in the mortgage, and yet the last-mentioned act as evidencing his intention prevailed to prevent the merger. The court said:

"Until he made a disposation of the property, and until some person acquired an interest, he was at perfect liberty to consider the mortgage merged or not, as might be most beneficial. If the question is to be decided by intent, express or implied, when does it become fixed and unchangeable? Certainly not until some one acquires an interest, and thereby obtains a right to draw it in question. It would be novel in principle, and I apprehend without precedent in any book of authority, that a stranger should urge, 'You once declared the mortgage was merged, and, although, at the time, it was indifferent to all the world in what manner you treated it, you are bound by that election.' "

Judge Sutherland also delivered an opinion in this case, in which he said:

"To establish the rule that the intention of the party shall be immediately declared, or the law shall declare it for him, would be virtually to take from him the privilege of election. How is he to make his intention known, except by his acts in relation to the property which is the subject of the charge? Is not a reasonable time, then, to be allowed him? Is he to be compelled immediately to assign the charge, if he intends to keep it distinct? or to sell the fee, if he intends the charge

shall merge? If the law gives him the privilege of election, it will give him a reasonable time within which to make it. This appears to me to be the good sense of the rule, and it is clearly sanctioned by the authorities to which I have adverted—particularly by the case of Forbes v. Moffatt.''

In Hatch v. Kimball, 16 Me. 146, it is held that the intention once sufficiently expressed was thereafter binding, which, of course, is correct.

In Rankin v. Wilsey, 17 Iowa, 463, it is said:

"His intention, whether express or implied, need not become fixed and unchangeable until some one acquires 'an interest and thereby obtains a right to draw it in question: and until some person acquired an interest, he was at liberty to consider the pledge merged or not, as might be most beneficial to him. By his defense in this case, as well as by his interest, he makes his election in favor of the merger; and by his election, there being no express intention shown. we are bound to be governed. The securities or pledges, then, which were held by Hornish, to indemnify him as surety. for Wilsey, having been discharged by the merger of the rents, which were the less estate, in the greater, before the right of the creditor attached to the less estate so pledged, a court of equity will not revive the securities at the instance of the creditor, for the purpose of enabling him to subject them to the payment of his debts.''

See, also, Longfellow v. Barnard, 58 Neb. 612, 79 N. W. 255, 76 Am. St. Rep. 117; Forthman v. Deters, 206 Ill. 159, 69 N. E. 97, 99 Am. St. Rep. 145, and note; Smith v. Roberts, 91 N. Y. 470; 2 Pom. Eq. Jur. (4th Ed.) §§ 786-792, et seq.; 21 C. J. ''Estates,'' §234. Also, generally, 10 R. C. L. ''Estates,'' §§27 and 28.

In this case Zirhut assigned for a present valuable consideration to the defendant First National Bank of Albuquerque all of his right in the estate, whether it be an equitable estate in the land, or an equitable interest in the proceeds of sale of the same, long before the rendering of the judgment in plaintiff's favor, the filing of the transcript thereof, and the issuance and service of the execution, thus evincing his intention to keep his beneficial interests separate from his title as

trustee.    There was nothing, therefore to which the judgment lien or execution could attach.

[8] 8.   Plaintiff argues that, aside from all of the foregoing considerations, it acquired some right under its execution.   The pertinent provisions of the sheriff's return on the execution are as follows:

"On this 14th day of June, 1918, I have levied the within execution on all of the right, title and interest of defendant, William J. Zirhut, in and to the estate of Annie Zirhut. deceased, by delivering a copy of this execution with a notice of levy to the First Savings Bank & Trust Company of Albuquerque, N. M., and William J. Zirhut, deceased; said levy being made in Bernalillo County, N. M."

The statute under which this execution was attempted to be levied in section 2192, Code 1915, the pertinent provisions whereof are as follows:

"*   *   *   And if the officer fail to find property sufficient to make the same he shall notify all persons who may be indebted to said defendant not to pay said defendant, but to appear before the court, out of which said execution issued, and make true answers, on oath, concerning his indebtedness, and the like proceedings shall be had as in cases of garnishees, summoned in suits originating by attachments."

It is apparent from a comparison of the sherfif's return and the statute that there was an utter failure to make a successful levy upon any funds in the hands of these trustees, as they were not summoned into court to answer as to their liability to pay the defendant, Zirhut.   The attempted levy, had it been effectual, would under the circumstances, have been unavailing for the reason heretofore mentioned that Zirhut had already parted with his interest in the fund.

From all of the foregoing it clearly appears that the judgment of the district court was correct, and should be affirmed; and it is so ordered.

BRATTON, J., and MECHEM, District Judge, concur.